## Butz' Estate

*C. D. Shull*, for petitioner.

*Arlington W. Williams* and *George T. Robinson*, for respondent.

DAVIS, P. J., May 6, 1946.—This matter comes before the court on petition of Elmer Singer, a residuary legatee under the will of decedent, for rule to show cause why the account of Herbert W. Learn and John A. Learn, executors of the estate of Maggie A. Butz, deceased, filed in the register's office of Monroe County, January 12, 1940, should not be opened for review and to determine:

"(*a*) Whether or not petitioner is obliged to pay interest on his indebtedness;

"(*b*) Whether or not petitioner is not entitled to one seventh credit on his indebtedness by virtue of being a one seventh residuary legatee;

"(*c*) Whether or not the claimed credit of $12,000 payment to your petitioner is a proper credit without cash payment to your petitioner;

"(*d*) Whether or not there is due to your petitioner a cash balance over and above the full amount of indebtedness."

The facts as stipulated and agreed and duly filed of record are as follows:

"(1) Maggie A. Butz died on September 26, 1933, a resident of the Borough of Stroudsburg, County of Monroe, State of Pennsylvania, leaving a will probated in the office of the Register of Wills of Monroe County, Pennsylvania, on October 10, 1933, recorded in Will Book, Vol. 13, page 127.

"(2) Elmer Singer is a resident of Pocono Township, Monroe County, Pennsylvania, and as by reference to said will appears, is a one seventh residuary legatee in the estate of said decedent.

"(3) The duly qualified and acting executors under the will were Herbert W. Learn and John A. Learn, both residents of Monroe County, Pennsylvania. The said Herbert W. Learn has died since his qualification as executor and John A. Learn is the sole surviving executor of the said estate.

"(4) The said executors filed a first accounting on January 12, 1940, reporting, inter alia, a gross estate for distribution of $195,088.86, which said account was confirmed nisi on February 12, 1940, and absolutely confirmed on March 14, 1940. The said account is by reference made part hereof. Distribution of $156,-077.52 of said estate was made pursuant to the figures set forth in the account and subject to the reservations hereinafter set forth, leaving for distribution an un-

accounted balance in the hands of the executors of $39,011.34, exclusive of income accrued since the date of said account.

"(5) All debts of decedent and specific legacies as set forth under the will of said decedent, have been paid. All expenses, attorney fees and commissions have been paid up to the date of filing of the first accounting, as above noted.

"(6) No audit of said accounting has ever been had nor has an audit been requested.

"(7) The remaining six residuary legatees, in addition to Elmer Singer as set forth in the will, have been joined in and made parties to these proceedings, there being substituted for the deceased Herbert W. Learn, who was an executor and a residuary legatee, the personal representatives of his estate.

"(8) Elmer Singer was indebted to decedent at the time of her decease, on the following written obligations:

"(a) A promissory note, dated December 13, 1915, in the principal amount of $1,600. This note was entered on the customary form of promissory note, which, by its terms on the face of the said note, bore interest.

"(b) A promissory note, dated July 27, 1917, in the principal amount of $370. This note was entered on the customary form of promissory note, which by its terms on the face of the said note, bore interest.

"(c) A promissory note, dated November 20, 1917, in the principal amount of $705. This note was entered on the customary form of promissory note, which, by its terms on the face of the said note, bore interest.

"(d) Mortgage dated November 26, 1929, in the principal amount of $5,897.91. This mortgage was entered on the customary form of mortgage, which, by its terms on the face of the said mortgage, bore interest.

"(9) Elmer Singer makes no claims of credit for interest paid during the lifetime of decedent. As to any

agreement that might exist made in the lifetime of decedent, between decedent and Elmer Singer regarding interest payments, the lips of Elmer Singer are sealed by virtue of the Act of May 23, 1887, P. L. 158.

"(10) Respondents do not wish to offer any testimony in regard to the question of interest payments by Elmer Singer.

"(11) The aforementioned account filed January 12, 1940, claims credit for payment to Elmer Singer of $12,000 Dollars. No cash payments have been made to Elmer Singer from this estate. The $12,000 have been entered by the executors on the records of the estate of decedent as credit for payment on the various debts of Elmer Singer, as hereinbefore outlined. There was charged to said Elmer Singer, interest on the full principal amounts on the various obligations from the original date of each obligation, accrued down to the date of the various credits claimed in the account.

"(12) Elmer Singer has been informed from the inception of the estate, by S. S. Shafer, attorney of record for accountants, that all of the obligations above mentioned of said Elmer Singer bore interest from their respective dates to the time of their final payment.

"(13) The last statement as of April 29, 1942, furnished to Elmer Singer by said S. S. Shafer, attorney of record for the executors, discloses claims of the estate for further payments by Elmer Singer on the claimed indebtedness due from said Elmer Singer but said claim of indebtedness as submitted gives no credit to Elmer Singer by reason of his status as a one seventh residuary legatee against either principal or interest claimed as due from him, as hereinbefore mentioned.

"(14) Elmer Singer is a nephew of decedent. Decedent left no descendants surviving her. All of the other residuary legatees are nephews and nieces of decedent.

"(15) Elmer Singer relied solely on the information as to his liability to the estate of decedent above noted to have been given to him by S. S. Shafer, attorney for accountants, until he consulted his present counsel of record in this proceeding immediately prior to the filing of same."

Testatrix, after making numerous specific bequests, ordered and directed that the rest, residue and remainder of her estate be divided into seven equal parts and bequeathed one full equal seventh part thereof to each of seven named nephews and nieces, petitioner in this case being one of the named nephews.

Paragraph designated "Fourth" in testatrix's will, duly proved and recorded as above set forth, is as follows:

"I hold obligations against several of the legatees or devisees named in this my will I now order and direct that if the same are not paid in my lifetime said obligations shall be taken and considered as a part of the share of said legatees or devisees in my estate and shall be accounted for accordingly."

The present controversy arises out of the interpretation of this paragraph of the will. Petitioner advances two primary rules of construction with which we agree, namely: (*a*) "All of testator's words must be considered in ascertaining her meaning." (*b*) "Our primary aim must be to ascertain and give full effect to the intention of the testator as it appears from the four corners of the will."

Counsel for petitioner recognizing that the general rule relating to advancements is confined to the parent and child relationship, contends that this paragraph discloses an intention on the part of testatrix to apply the principle of advancement to these obligations, thereby eliminating any liability for interest on the obligations. It is well established that debts converted into advancements by testamentary direction do not bear interest unless a clear intent to the contrary is

shown: Porter's Appeal, 94 Pa. 332; Knight's Estate, 253 Pa. 290, 293. However, the application of the doctrine of advancements is restricted to cases of intestacy, except in the event of a will which therein clearly expresses otherwise: Laughlin Estate, 157 Pa. Superior Ct. 155, 160.

Therefore, if we disregard the matter of the parent and child relationship, we still would have to find from the will itself a clearly expressed intention that the obligations mentioned therein and in controversy here should be treated as and have the attributes of an advancement in order to sustain petitioners position. After a careful study of the will we are unable to find such an intention clearly expressed.

The obligations in controversy consist of promissory notes and a bond and mortgage, all of which by the terms thereof bear interest. By the terms of the instrument the obligor is under the same duty to pay interest as he is to pay principal. Testatrix refers to these obligations without making any distinction between principal and interest. She states, "I hold obligations . . . if the same are not paid in my lifetime said obligations shall be taken and considered", etc. It appears to us that there is nothing in this language which discloses an intent on the part of testatrix to disregard or forgive a part of the obligation, or in any manner to distinguish between principal and interest which comprises the obligation. The words, "if same are not paid in my lifetime," to our mind disclose the testatrix regarded the obligations as debts and not as advancements or in the nature of advancements, because an advancement is a gift: Harrison's Estate, 298 Pa. 514. If she had regarded these obligations as gifts or in the nature of gifts she would not have contemplated the possible payment of the same in her lifetime.

All residuary legatees are nephews and nieces. Testatrix by her will provides that the residue and re-

mainder of the estate be divided into seven *equal* parts and then bequeaths one part thereof to each of seven named nephews and nieces. These provisions indicate that testatrix intended that all residuary legatees should share equally in the distribution of her residuary estate. If we adopt the theory of petitioner the debtor legatees would have a substantial advantage over the nondebtor legatees. Even among debtor legatees we would not achieve equality. The law favors a construction which will work equality of distribution among those standing in the same relationship to the testator: Jones Estate, 151 Pa. Superior Ct. 396, 400.

We have considered the able argument of counsel for petitioner stated as follows:

"If testatrix had omitted the fourth paragraph of the will, it would have been the clear duty of the executors to have enforced payment of the debts as evidenced by the obligation in the hands of testatrix at the time of her death. But testatrix did 'order and direct . . . said obligations shall be taken and considered as *a part* of the share of said legatees . . . and shall be accounted for accordingly'. Hence, it is evident that it was the desire of the testatrix that something apart from the usual and ordinary operation of the law should be effected."

If we agreed that it was the desire of testatrix that something apart from the usual and ordinary operation of the law should be effected, we still could not find from the language quoted any expressed intention that interest should not be charged. The paragraph might be construed as depriving the executors of the usual and ordinary right to collect the obligations from the obligors and requiring the amount thereof to be deducted from the share. This question is not before us; therefore, we are not passing on it. However, it is not unusual for testators to direct that something be done which the law would require to be done without the direction by the testator, such as the direction that

debts be paid or that a wife shall be entitled to her legal rights.

In the light of paragraph four of the will we have considered the fact that petitioner's obligations consume all or practically all of his legacy. When testatrix made her will she knew she could not then ascertain with certainty the amount of her estate or the amount of the legatees' obligations at the time of her death. We believe the words, "shall be taken and considered as a part of the share," denote an intent on the part of testatrix to designate a method of distribution rather than an intent to designate the quantity or amount of legacy to be received. Therefore, giving full effect to the intention of testatrix as it appears to us from the four corners of the will, we enter the following order:

And now, May 6, 1946, rule dismissed, costs to be paid from the fund in hands of executors.