McLEAN v. McLEAN et al.

(Supreme Court, Westchester County, Special Term.   March 24, 1916.)

1. WILLS �össe693(4)—POWERS—EXECUTION—CONFORMITY TO POWER.
    J. gave property in trust for his son C. for life, with power to appoint one-third of the fund to his wife or to the testator's lineal descendants, or to any or either of them in such manner and proportions as he deemed proper.  C. bequeathed the property as to which he had the power of appointment to his wife for life or during widowhood and gave her power to appoint the principal to certain corporations.  His will also gave the residue and remainder of his estate to his wife.  *Held*, that J.'s will authorized an appointment by C. to the persons therein mentioned and no others, and C. was not authorized to give the property directly to such corporations or indirectly by giving his wife a power of appointment in their favor.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. § 1655; Dec. Dig. ⨶⨶693(4).]

2. POWERS ⨶⨶39—FAILURE TO EXECUTE POWER OF APPOINTMENT.
    Even though the power of appointment given the wife had been valid, it would not avail the corporations, where the wife did not execute it, but made a different disposition of the property.
    [Ed. Note.—For other cases, see Powers, Cent. Dig. §§ 153, 154; Dec. Dig. ⨶⨶39.]

3. POWERS ⨶⨶37—INVALID EXECUTION OF POWER—CONSTRUCTION.
    The power given the wife could not be eliminated from C.'s will, thus leaving a valid execution of the power and vesting the fee in the wife, nor treated as a general beneficial power by regarding the direction for an appointment to the corporations as precatory.
    [Ed. Note.—For other cases, see Powers, Cent. Dig. § 150; Dec. Dig. ⨶⨶37.]

4. WILLS ⨶⨶693(4)—EXECUTION OF POWER OF APPOINTMENT—CONFORMITY TO POWER.
    The appointment to the wife for life or during widowhood was clearly within the terms of the power and was valid.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. § 1655; Dec. Dig. ⨶⨶693(4).]

⨶⨶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. WILLS ⬨⟹694—SUFFICIENCY OF EXECUTION OF POWER OF APPOINTMENT—
RESIDUARY CLAUSES.

Under Real Property Law (Consol. Laws, c. 50) § 176, providing that real property embraced in a power to devise passes by a will purporting to convey all real property of the testator unless the intent that the will is not to operate as an execution of the power appears either expressly or by necessary implication, and Personal Property Law (Consol. Laws, c. 41) § 18, similarly providing as to personal property, the remainder or principal of the fund passed under the residuary clause to the wife, since an intent not to pass the property did not appear expressly or by necessary implication, and, while C. did not contemplate that the principal should pass by the residuary clause, every testator is presumed to know and intend that property ineffectually disposed of will pass under a residuary clause.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1662–1664; Dec. Dig. ⬨⟹694.].

6. WILLS ⬨⟹858(1)—CONSTRUCTION—RESIDUARY CLAUSES.

Ordinarily, a residuary clause will carry with it all property of the testator not otherwise effectually disposed of, including devises or bequests which have become lapsed or are void unless the language of the will itself prohibits such a construction.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2173, 2180, 2181, 2183; Dec. Dig. ⬨⟹858(1).]

7. POWERS ⬨⟹33(1)—SUFFICIENCY OF EXECUTION OF POWER—STATUTORY PROVISIONS.

Under Real Property Law, § 176, and Personal Property Law, § 18, providing that property embraced in a power passes by a will purporting to dispose of all of the donee's property unless a contrary intent appears, the intent not to execute the power cannot be implied unless it so clearly appears that it is not to be avoided.

[Ed. Note.—For other cases, see Powers, Cent. Dig. §§ 110, 120; Dec. Dig. ⬨⟹33(1).]

8. WILLS ⬨⟹694—SUFFICIENCY OF EXECUTION OF POWER OF APPOINTMENT—
RESIDUARY CLAUSES.

A person having power to appoint a fund to his wife or his father's lineal descendants, or any or either of them, in such manner and proportions as he deemed proper, gave the property to his wife for life or during widowhood, and attempted to give her a power to appoint the fund to certain corporations. He also gave the residue and remainder of his estate to her. *Held* that, while he meant to give his wife only a life estate and intended that the remainder should go to some one else, what he would have meant or intended to do with the remainder, had he supposed the attempted power was invalid, must be supplied by legal presumption following the ordinary rules of construction applied to a will of the testator's own property.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1662–1664; Dec. Dig. ⬨⟹694.]

9. WILLS ⬨⟹694—SUFFICIENCY OF EXECUTION OF POWER OF APPOINTMENT—
RESIDUARY CLAUSES.

The will disclosed no intention, and no intention could be presumed, that the property should go to his father's lineal descendants if the attempt to give the remainder to the corporations could not be legally effected.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1662–1664; Dec. Dig. ⬨⟹694.]

---

⬨⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

10. **WILLS** &#9901;&#8658;858(1)—EXECUTION OF POWER OF APPOINTMENT—CONFORMITY TO POWER.

As the donee of the power was authorized to appoint the entire fee to his wife, a holding that the remainder passed to her under the residuary clause did not frustrate the intention of the donor of the power.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2173, 2180, 2181, 2183; Dec. Dig. &#9901;&#8658;858(1).]

11. **WILLS** &#9901;&#8658;858(2)—CONSTRUCTION—ASSUMPTION.

It must be assumed that the Legislature in enacting Real Property Law, § 176, and Personal Property Law, § 18, providing that a will purporting to pass all the testator's property will pass property embraced in a power unless a contrary intention appears, was familiar with the rule of construction that a general residuary clause carries all property not otherwise effectually disposed of.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 2174; Dec. Dig. &#9901;&#8658;858(2).]

Action by James C. H. McLean, as sole surviving trustee, etc., against James C. H. McLean, individually, etc., and others, for an accounting and a construction of certain provisions of the wills of James M. McLean and Cornelius McLean. Judgment for defendant Schofield as executrix, etc.

O'Brien, Boardman & Platt, of New York City, for plaintiff.

George E. Cogswell, of New York City, for George H. McLean's executors.

Strang & Taylor, of White Plains, for defendant Laura M. Schofield, individually and as executrix, etc.

Frederick W. Clark, of Mount Vernon, for defendant Mt. Vernon Hospital.

Johnson & Mills, of Mount Vernon, for Martha Wilson Home.

YOUNG, J. This is an action for a judicial settlement of the accounts of trustees under certain trust agreements and for a construction of certain provisions of the wills of James M. McLean and Cornelius McLean.

James M. McLean died May 13, 1890, leaving a will which was admitted to probate in New York county. By that will he gives the residue of his estate to his executors in trust, to apply the net income of one-half of such residuary estate to each of his two sons, Cornelius McLean and George H. McLean, for life, and upon the death of each of them he directed that one-half of the residuary estate of which they had received the income respectively should be conveyed in fee to the then living lawful issue of such son so dying. The will then provided as follows:

But each of my two sons may by his last will and testament duly executed by him direct and appoint the payment transfer and conveyance upon his decease of a part or parts not exceeding in aggregate one-third of the share whereof he shall so have enjoyed the life use to or among my then living lineal descendants and his wife him surviving or any or either of them and in such manner and proportions as to him shall seem proper. And such a testamentary appointment duly made by either of my two sons within the limits thus authorized shall be respected and will to that extent qualify the preceding provisions of this article of my will.

The will also provided that, if either of the two sons should at his decease leave no lawful issue, the share of the residuary estate of which he had had the income, or so much thereof as had not been disposed of by testamentary appointment, should be conveyed in fee to the other of said two sons, if then living, or, if deceased, to his then living lawful issue.

George H. McLean and Edward A. Walton were appointed and qualified as executors of James M. McLean's will.

Both sons survived their father. George H. McLean married and had two sons, James C. H. McLean and Alan D. McLean. Cornelius McLean married Leslie A. Eager, but had no issue.

On February 18, 1908, Cornelius McLean died leaving his widow, Leslie A. McLean, surviving. He left a will which was probated in Westchester county, whereby he gave the use of all the property over which he had the power of appointment under his father's will to his wife as long as she remained his widow, with power to appoint by will the principal, one-half thereof to the Mt. Vernon Hospital and the remaining one-half to the Westchester Women's Club of Mt. Vernon. The residue and remainder of his estate he gave to his wife, who was named as executrix and thereafter qualified as such.

Upon Cornelius McLean's death, there survived him, of those to whom he was entitled under his father's will to appoint one-third of the share of which he had in his lifetime enjoyed the income, his widow, Leslie A. McLean, his brother, George H. McLean, and his brother's sons, James C. H. McLean and Alan D. McLean.

A dispute arose as to whether the provision of Cornelius McLean's will was a valid exercise of the power contained in his father's will. Two agreements were then made in settlement of this dispute, which provided in substance for the appointment of trustees to hold certain securities and pay the income thereon to Leslie A. McLean during her life, and upon her death to transfer the principal to the executors of James M. McLean's will, or to the persons judicially determined to be entitled to the fund on her death or remarriage. The trustees under this agreement were James C. H. McLean and Leslie A. McLean. They took possession of the securities, received the income, and paid it to Leslie A. McLean in accordance with the agreement until her death.

George H. McLean died February 18, 1913, leaving a will by which he gave the one-third of the capital of the share of his father's estate held in trust for his benefit during his life to his wife, Harriet A. McLean. His will further provided that if his brother, Cornelius McLean, died before him without issue, the residue of his estate should go, one-third to his wife, Harriet A. McLean, and the remaining two-thirds to his son James C. H. McLean and Harriet A. McLean, in trust, to pay the net income to his wife for life, and on her death the capital to go to his two sons James C. H. McLean and Alan D. McLean, in equal shares, and the issue of either son previously dying.

Leslie A. McLean died March 19, 1915, leaving a will and a codicil thereto, the latter of which contained the following provision:

I give, devise and bequeath to my sister Laura M. Schofield of Mt. Vernon, New York, all the rest, residue and remainder of my estate, real, personal and mixed, wherever situated, including any property to which I may be entitled now or hereafter under the wills of James M. McLean and Cornelius McLean or either of them, except as in my said last will and testament provided.

The will provided that, if the estate exceed $75,000, legacies should be given to the Westchester Women's Club, $1,000; Martha Wilson Home, $2,000; Mt. Vernon Hospital, $2,000; George E. Eager, $500; Ellen Wilson, $500; Thomas C. Eager, $10,000; Ansel F. Eager, $10,000. Laura M. Schofield was named as executrix of this will and duly qualified as such.

The question presented here is as to the title to the trust fund under the agreements, which is the fund over which Cornelius McLean had the power of appointment under his father's will. This question involves the construction and validity of the provision of Cornelius McLean's will by which the power of appointment was sought to be exercised.

The plaintiff and the executors of George McLean contend that there was no valid execution by Cornelius McLean of the power of appointment given by his father's will beyond the life estate to his wife, Leslie A. McLean, which has now terminated, and that the remainder therefore passes under James M. McLean's will to the executors of George McLean.

On the other hand, the defendant Laura M. Schofield claims to be entitled to the fund as executrix and residuary legatee under Leslie A. McLean's will upon the theory that the will of Cornelius McLean contained a valid execution of the power granted in his father's will and vested the title in his wife, Leslie A. McLean.

The Mt. Vernon Hospital claims that it is entitled either to one-half the fund under the power of appointment contained in Cornelius McLean's will, or that the title to the fund vested in Leslie A. McLean under the will of Cornelius and passed to her legatees, of which the hospital is one; and the Martha Wilson Home makes a similar claim as legatee under Leslie A. McLean's will.

[1] The first consideration is the intention of the donor of the power, James M. McLean. His will authorized Cornelius to appoint one-third of one-half of the residuary estate to the testator's lineal descendants, and the donee's wife him surviving, or any or either of them, in such manner and proportions as he deemed proper. The language of the will is clear and simple and authorized an appointment by Cornelius to persons described and defined in the will, and to no others. The contention of the Mt. Vernon Hospital that it is entitled to one-half the principal under the execution of the power so attempted in Cornelius McLean's will is therefore untenable.

[2] Clearly, he was not authorized by the power to give this property directly to the hospital and the women's club. The power of appointment given by his will to his wife in favor of the hospital and the club is imperative. Smith v. Floyd, 140 N. Y. 337, 35 N. E. 606. Otherwise, it would not avail them here, as Leslie A. McLean did not

execute it in her will. They, of course, were not objects of the power contained in James M. McLean's will, and it seems plain that Cornelius could not accomplish in this indirect way an appointment which he could not make to them directly.

It remains to be considered whether there was any execution of the power by Cornelius beyond the life estate to his wife. The questions presented are difficult, as well as novel and interesting, and in their consideration I have been greatly aided by the very careful and elaborate briefs of counsel.

[3, 4] It is urged that the clause contained in Cornelius McLean's will which attempts an execution of the power of appointment should be construed as intending an appointment to his wife for life or during widowhood with a general power to her of appointment by will, and that the direction for an appointment of the principal to the hospital and club is precatory. It is further urged that the attempted appointment by Cornelius to Leslie A. McLean was valid, and that the limitation for her life or during widowhood with power of appointment to the hospital and club were invalid and should be stricken out, thus leaving a valid execution of the power of appointment which vested the fee in Leslie A. McLean. But the difficulty with both these contentions is that the language of the will of Cornelius McLean clearly create an imperative power or special power in trust for the benefit of the hospital and the club (Smith v. Floyd, supra), and I am unaware of any rule of construction by which such a special power may be transformed into a general beneficial power by merely striking out the beneficiaries of the special power. Nor does it seem possible to eliminate by mere construction the direction in Cornelius McLean's will appointing the estate to his wife for life or during widowhood, and thus change it into an appointment in fee. The appointment to her for life or during widowhood was clearly within the terms of the power, and is therefore valid.

[5] But it by no means follows that the will of Cornelius McLean, taken as a whole and construed according to well-settled principles, does not contain a valid execution of the power of appointment in question. By its terms he gave to his wife an estate for life or during widowhood in the property of which he had the power of appointment. The remaining provisions concerning the principal of the property are, as above shown, invalid. But the will contains a residuary clause, by which he left all the residue of his property to his wife, Leslie A. McLean. The important question in this case is: Did the principal or remainder of the fund arising out of the power of appointment pass to Leslie A. McLean under this residuary clause? This question involves a consideration of the general rules of construction, and the application of the provisions of certain statutes. Section 176 of the Real Property Law provides as follows:

Real property embraced in a power to devise passes by a will purporting to convey all the real property of the testator, unless the intent that the will is not to operate as an execution of the power, appears, either expressly or by necessary implication.

Section 18 of the Personal Property Law also provides as follows:

Personal property embraced in a power to bequeath, passes by a will or testament purporting to pass all the personal property of the testator; unless the intent, that the will or testament shall not operate as an execution of the power, appears therein either expressly or by necessary implication.

It has been held that an attempted appointment is to be construed precisely as if it had been a devise or bequest of the donee's own property. Austin v. Oakes, 117 N. Y. 577, 23 N. E. 193. Bearing these rules of construction in mind, the will of Cornelius McLean must be so construed as to effectuate a valid execution of the power of appointment in question, unless the will taken as a whole shows a contrary intent; or, in other words, discloses an intention on his part to leave the remainder or principal of the fund over which he had the power of appointment undisposed of and the power to that extent unexecuted. This intention must be gathered from a consideration of the entire scope and meaning of his will taken as a whole, and not of any particular clause or clauses standing alone. It must also be observed that, under the statutes above quoted, the court is not called upon to find or determine a direct intention on the part of the testator, as gathered from the will, to execute the power. That intent is presumed; the contrary intent must appear. The duty of the court in this respect is to consider the provisions of the will and determine whether or not there is disclosed by the will expressly or by necessary implication an intention on the part of Cornelius not to execute this power of appointment. If the will shows such a contrary intent, the power of appointment over the fund in question was not executed as to the principal or remainder. If no such contrary intent is disclosed, then the fund in question passed by the residuary clause and belongs to the executrix of Leslie A. McLean.

[6] It is contended by the plaintiff and by the executors of George McLean's will that the will of Cornelius does show an intent on his part that his will shall not operate as an execution of the power, and counsel point to the provisions granting her an estate for life in this fund or during widowhood with power to appoint the remainder to the hospital and the club as showing that Cornelius never intended, by his residuary clause or otherwise, that the principal or remainder of the fund over which he had the power of appointment should pass to his widow. This contention, however, overlooks the ordinary rules of construction as applied to testamentary provisions. Ordinarily a residuary clause will carry with it all property of the testator not otherwise effectually disposed of, including devises or bequests which have become lapsed or which have been held to be void, unless the language of the will itself prohibit such a construction. In re Bonnett, 113 N. Y. 522, 21 N. E. 139; Albany Hospital v. Albany Guardian Society, 214 N. Y. 435, 446, 108 N. E. 812.

[7] I am not aware of any authority, and none has been pointed out, which forbids the application of this rule to a fund arising out of a power of appointment, the partial execution of which has been held void. On the contrary, as the authorities require the appointment to be construed precisely as if it had been a devise or bequest by the testa-

tor of his own property, it seems plain that this rule of construction must be applied to the fund in question. Clearly, Cornelius McLean intended to exercise his power of appointment. He did not intend that any portion of it should remain unexecuted. His will purports to pass all his property. Taken as a whole, it neither expressly nor by necessary implication shows any intent not to pass the property embraced in the power. On the contrary, it expressly attempts to execute the power. But if we confine the operation of the statute to the residuary clause, is there any necessary implication that it is not to pass the property embraced in the power? It is true that Cornelius did not contemplate that the principal of the property embraced in the power should pass by the residuary clause. On the contrary, he supposed that he had effectually executed the power over the principal in favor of the hospital and the club. But every testator is presumed to know that unless he, in some way, speaks by his will to the contrary, property ineffectually disposed of for any reason will fall into his residuary estate and pass by the residuary clause of the will. Indeed, to prevent intestacy, he is presumed to intend that it shall so pass. Viewing the residuary clause in this light, there cannot, of course, be any necessary implication from its language that it is not intended to pass the property embraced in the power. The intent not to execute the power cannot be implied, unless it so clearly appears that it is not to be avoided. Lockwood v. Mildeberger, 159 N. Y. 181, 53 N. E. 803.

[8] The reasoning that, because Cornelius gave his wife only an estate for life or widowhood in the property in question, he plainly implied that he did not mean by the residuary clause to give her the remainder, is altogether too narrow. What Cornelius meant by the attempted execution of the power was just what the clause of the will provides—a life estate or less to his wife, with power to her to appoint the remainder to the institutions named. What he would have meant or intended to do with the remainder, had he supposed that the attempted power to his wife was invalid, must be supplied by legal presumption following the ordinary rule of construction when applied to a will of the testator's own property. Riker v. Cornwell, 113 N. Y. 115, 20 N. E. 602; Langley v. Westchester Trust Co., 180 N. Y. 326, 73 N. E. 44.

I am also unable to agree with the argument that a clearly expressed intention that the property should go to some one other than his wife shows an expressed intention that it should not pass to her under his residuary clause. Such an intention can have no greater weight than the clearly expressed intention of a testator that a void bequest or devise shall go to some one other than his residuary legatee. But, as we have seen, such a void bequest or devise will pass to the residuary legatee to effectuate what the law deems testator's controlling intention, viz., not to die intestate.

Again, the result here is not very different from that reached in the Bonnett Case, supra, where a void bequest to a corporation for a certain purpose was held to pass under the residuary clause to the same corporation for an entirely different purpose. True, had Cor-

nelius supposed that this provision in favor of the hospital and the club were invalid, he would hardly have created the anomalous situation of giving to his wife an estate for life, defeasible on remarriage, and also the remainder. But to say that that shows an intent not to execute the power by the residuary clause compels us to assume that he made the provisions in favor of the two institutions named, knowing that they were unauthorized and therefore void. Such a conclusion is manifestly unsound. To illustrate, suppose a testator gives his wife an estate for life or during widowhood in a certain specific fund, with remainder to a corporation incapable of taking or for some purpose held to be void. Could it be held that as to that fund the testator died intestate? Clearly not. But the result there would be just as anomalous as that which has arisen here, and there seems to be no reason or authority why it should not be solved by the same principles of construction.

[9] It is also argued that Cornelius intended that, in the event that his attempt to give the remainder of this fund to the two institutions named in his will could not be legally effected, such remainder should go to such persons entitled to it under his father's will. This cannot be sustained, either as a legal presumption, or otherwise. Certainly, there is nothing in his will to disclose any such actual intention on his part, or any intention that any part of his property, either his own, or that over which he had the power of appointment, should go to his father's lineal descendants, or to any one except his wife and the two institutions named. Nor do I see how such a result can be attained by any legal presumption. On the contrary, the ordinary legal presumption is against an intention to leave the power unexecuted, just as it is against a testator's intention to die intestate as to any part of his property. Such a result in either case must be reached through necessity, and because no other is possible. As his will contained a general residuary clause, no such necessity arises, and the legal presumption is contrary to such contention.

[10] The argument that James M. McLean intended to keep the money in the family is broader than the language of his will warrants. He, of course, intended that Cornelius should only execute the power of appointment in favor of certain members of his family and the wife of Cornelius. With the ultimate disposition by Cornelius McLean's appointees after the exercise of the power, James M. McLean's will expresses no concern and does not attempt to control it. It is also argued that James M. McLean's intention can only be effectuated by holding that the power of appointment given to Cornelius remained unexecuted as to the remainder in question. Of course, any execution of the special power to Cornelius must strictly conform to the authority conferred and be confined within the limitations imposed. It is urged, in substance, that, when Cornelius gave to his wife a life estate or during widowhood in the property embraced in the power, he literally complied with the terms of his father's will by giving the property to his wife in such manner and proportion as to him seemed proper and fully executed the power in his wife's favor so far as he intended, and that, the appointment as to the remainder being unau-

thorized, it passed under his father's will to his brother George as not having been "disposed of by his testamentary appointment duly made by him" as authorized. But this is an extremely narrow construction of the power. The only restriction upon Cornelius McLean's authority was as to the persons to be appointed. He was authorized to appoint the entire fee to his wife. If therefore, by a reasonable construction of his will upon well-settled principles, an intention can be gathered which will enlarge his wife's estate into a fee, it cannot be said to transcend the authority of the power. James M. McLean clearly contemplated that Cornelius might execute the power by vesting the fee in his wife, Leslie A. McLean, and if he had done so no question could arise as to the right of her estate to take the fund. If therefore the property embraced in the power be held to have passed under the residuary clause of Cornelius McLean's will, the result is the same, and James M. McLean's intention is not frustrated, but, on the contrary, is carried out.

It is true that there does not seem to be any decision by the courts of this state where it has been held that a general residuary clause will carry with it property covered by an attempted execution of a power of appointment held to be unauthorized and void, and it must be borne in mind that, in the cases in which the courts have construed general residuary clauses and held them to carry lapsed and void legacies and devises, the rule of construction has been applied, thus far, only to the testator's own property. Property over which the testator has only a special power of appointment, however, is not his own, but that of another, and the question whether this rule of construction standing alone is broad enough to include such property is by no means free from doubt. But, when we reach this point, we are aided by the statutes above quoted under which a will purporting to pass all testator's property passes that embraced in a power. It is quite likely that in enacting these statutes the Legislature had in mind the failure of a testator to make any reference in his will to the power, through ignorance of any distinction between his own property and that over which he had merely a power of appointment. But to say that that was the only evil sought to be cured is to ignore the broad language used in the statute. It does not say, merely, that a failure to refer to the power shall not prevent a will from executing the power if such be the manifest intention of the testator, but that a will purporting to cover all testator's property shall pass property embraced in a power unless the will shows a contrary intent.

[11] We must assume that the Legislature was familiar with the rule of construction that a general residuary clause carries all property not otherwise effectually disposed of. And it seems clear to me that the Legislature intended that in construing a will property embraced in a power of appointment should be considered and treated in the same manner as the testator's own property. The language used in the statute is clearly broad enough to cover any situation which might arise, either through mere failure to mention the power in the will, or through a lapsed or void appointment. Whether the statute is to be construed strictly, or liberally as a remedial statute, the court should

not limit its scope to an extent unwarranted by its plain language. I do not see that the distinction attempted to be drawn between special and general powers has any application to the situation presented here. There is nothing in the statutes above quoted which show any such distinction, nor have I been referred to any authority to that effect. In construing a similar English statute, it has been held that a general residuary clause operates to pass property embraced within a void execution of a power of appointment. Freme v. Clement, L. R. 18 Ch. Div. 499; Bush v. Cowen, 9 L. T. Rep. N. S. 161; Oake v. Heath, 1 Ves. Sen. 135; In re Hunt, L. R. 31 Ch. Div. 308. It is true that the English cases seem to be based upon a statute relating to general beneficial powers, and those cases related to such general powers; but our statutes make no such distinction, but are broad enough to cover all powers, special as well as general. I do not see, therefore, why the reasoning of the English cases is not applicable here. Aside from these English authorities, however, I believe this doctrine is based on sound principles of construction recognized by the courts of this state.

I conclude therefore that the clause of the will of Cornelius McLean by which he attempted to execute the power of appointment given to him by his father's will was only valid to the extent that it appointed an estate to his wife for life or during widowhood; that the remaining provisions of that clause, giving the remainder or principal to the Mt. Vernon Hospital and the Westchester Women's Club of Mt. Vernon, were void; and that such remainder or principal of the fund in question passed by the residuary clause of his will to his wife, Leslie A. McLean, and her executrix is entitled to receive the fund under her will.

Decision and judgment in conformity with this opinion may be settled on notice. The question of costs and allowances may be presented upon such settlement.