Cryder, Appellant, *v.* Garrison.

Argued November 16, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*M. Paul Smith*, with him *Harvey B. Smith*, *Smith & Eves*, and *Smith, Cahall & Aker*, for appellants.

*Frank C. Elmes*, for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, January 17, 1957:

This appeal is concerned with the interpretation of a will. As in many of such cases, no difference of opinion is admissible with respect to the germane rules of construction. It is only a matter of their relative applicability. The basic question involved is whether a specific devise of the testatrix's "home" property to "three nieces", appositely named, was a devise to them individually or as a class. One of the nieces having predeceased the testatrix, residuary legatees and the decedent's executors asserted that the specific devise lapsed to the extent of a one-third share in the property and fell into the residue.

The issue was raised for judicial decision in an action of ejectment instituted by the executors of the testatrix's will (who were also two of the residuary legatees) against the surviving nieces' subsequent transferee of the property. On stipulation of counsel, the court disposed of the proceeding on the pleadings without a jury, there being only one question involved—and that a question of law. After argument by counsel, the learned trial judge entered a final order wherein he found a verdict for the defendant transferee and against the plaintiff executors, entered judgment in favor of the defendant on the verdict and dismissed the complaint with costs following the judgment. In support

of its conclusion of law, the court filed an accompanying opinion holding that the specific devise was of an integral property to the testatrix's three nieces as a class. The executors have appealed the judgment. In addition to the substantive question of law involved, the appellants pose several procedural questions, raising matters not really in dispute, to which we shall refer briefly.

Ejectment is the recognized form of action for the settlement of a question of title: *Yarnall Estate,* 376 Pa. 582, 587, 103 A. 2d 753; *Michalak Estate,* 377 Pa. 532, 534, 105 A. 2d 370. All parties to the record and the court below were agreed that ejectment was the proper procedure for determining the question raised by the pleadings; and no reason has been advanced why it was not appropriate to the instant controversy. Compare *Stevenson v. Scott,* 188 Pa. 234, 235-237, 41 A. 533. Also, the executors had a right to appeal from the judgment of the court below disposing, as it did, of the question concerning the ownership of property which, as fiduciaries, they were seeking to recover as an asset of the testatrix's residuary estate: *Krick's Estate,* 342 Pa. 212, 216, 20 A. 2d 195. And, by a parity of reasoning, the executors, as parties litigant, had a right to institute the proceeding in the court below. No question of distribution was at any time involved. See *Krick's Estate,* supra, citing *Olney Bank & Trust Company Case,* 337 Pa. 357, 360, 361, 11 A. 2d 150, 151, 152.

The appellants further argue that they are not barred by laches from pursuing their right to a legal remedy in the premises. As we read the opinion of the court below, the plaintiffs were not held to be so barred. The court's reference to the seeming delay in the plaintiffs' institution of the action was merely an argumentative makeweight in support of the court's

inference that the executors lacked faith in their own contention. However that may be, it is of no materiality here. The action is at law, and the statute of limitations had not run when it was instituted. Analogizing the action to a suit in equity, where laches is applicable, was not relevant to the question involved which, first and last, was simply one of the decedent's testamentary intent with respect to her home property.

By her will of February 7, 1946, the testatrix gave and devised her "residence property . . . to [her] three nieces, Edna Turnbach, Emma Turnbach and Gladys Turnbach, to them and their Heirs forever." She next directed her executors "to convert all the rest, residue and remainder of [her] estate into money as soon after [her] death as may be possible, and from the fund so realized, . . . [directed] distribution" of pecuniary bequests to twelve named individuals, the Turnbach nieces not being among them. By her codicil, dated June 25, 1946, the testatrix declared, "Let the *Turnbach girls* have *my home* but have them pay 2,000 for it to help with expenses as I am afraid until my funeral is paid for and the Government takes out their big fee the rest of the children will not have any thing at all" (Emphasis supplied). By a second codicil, dated September 2, 1946, the testatrix resolutely affirmed,—"I want every thing to be carried out as I have it in my first Codicil except not to have the Turnbachs (Edna, Emma, and Gladys) to pay $2,000 to the estate for my home. I want to give my home to them, free from any charge. They have been very unfortunate and have been *very very* good to me" (Underscoring, the testatrix's). By her last codicil of April 10, 1948, she cut down the lot size of her devise to her "three (3) nieces—Edna Turnbach, Emma Turnbach and Gladys Turnbach" by reaffirming her devise of her *residence* at the address

stated "together with the southerly portion of the lot upon which it stands . . . ."

Five months after the testatrix's execution of her last codicil, Edna Turnbach died on September 15, 1948, thus predeceasing the testatrix who died on April 7, 1950.

It is a general rule of construction that, where there is a testamentary bequest or devise to two or more persons, each of whom is specifically named, a presumption arises that the gift or devise is to such persons as individuals and not as a class and, consequently, the share of one who predeceases the testator lapses: see *Sharpless's Estate,* 214 Pa. 335, 338, 63 A. 884; also Hunter's Pennsylvania Orphans' Court Common Place Book, Vol. II, *Legacies and Devises,* §12 (j) and cases there cited. This rule is, of course, subordinate to the cardinal rule of construction that "The intention of the testator is the pole star in the interpretation of every will and that intention must be ascertained from a consideration of the entire will, including its scheme of distribution as well as its language, together with all the surrounding and attendant circumstances": *Lifter Estate,* 377 Pa. 227, 231, 103 A. 2d 670. "Neither precedents nor rules of construction can override the testator's expressed intent": *Long's Estate,* 270 Pa. 480, 487, 113 A. 675.

The legal concept with respect to the presumption first above mentioned was well expressed for this court by Mr. Justice STEWART in *Sharpless's Estate,* supra, as follows: "The proposition that a gift to several individuals described by their respective names, may be construed a gift to a class, if it is apparent from the will that the testator so intended, is not open to dispute. It is but a corollary of the larger and more comprehensive rule that subordinates everything in the con-

struction of a will, to the expressed intention of the testator." And, in *Billings's Estate (No. 1),* 268 Pa. 67, 70-71, 110 A. 767, it was recognized that "Even though the beneficiaries are named the gift may still be one to a class if it otherwise appears from the will that the testator so intended and that the enumeration was merely for the purpose of fixing with certainty the members of the class".

The learned court below, guided by the foregoing basic principles of testamentary construction, logically and cogently deduced from the testatrix's will and codicils a clear intent that the "Turnbach girls", as a class, were to receive her "home" and the southern end of the lot whereon it was situated. True enough, the testatrix, in devising her "residence property" by her will proper to her "three nieces", also named them individually. But, the enumeration was obviously for the purpose of fixing with certainty the members of the class (cf. *Billings's Estate,* supra) and not for the purpose of individuating aliquot shares in the property. The will named many other persons as beneficiaries thereunder; and confusion was to be avoided. Apparently testatrix left only collaterals to survive her; at least no issue is mentioned or referred to in her will or codicils.

The controlling *animus donandi,* so far as the decedent's residence property is concerned, is that contained in her first codicil; and there she devised her "home" to the "Turnbach girls" without separately identifying them and laid a charge of $2,000 against the home in favor of the residuary fund. This *class* devise, the testatrix expressly reaffirmed in her subsequent codicil by positively declaring,—"I want every thing to be carried out as I have it *in my first Codicil* except not to have the Turnbachs (Edna, Emma, and Gladys) to

pay $2,000 to the estate for my home. *I want to give my home to them, free from any charge*" (Emphasis supplied). Not once did the testatrix use the Christian names of the Turnbach sisters except parathentically, even putting such names in actual parenthesis in the second codicil as above shown.

While the charge against the "home", as laid by the first codicil, was extinguished by the second, both codicils continue to have certain testamentary effect; they form an evidentiary part of the probated writings (*Buzby Estate*, 386 Pa. 1, 9, 123 A. 2d 723); and, as such, they supply a strong argument supporting the testatrix's intent to give her home property to the "Turnbach girls" or such of them as survived her, free of any charge whatsoever. Certainly it is not to be inferred that, while the charge existed under the first codicil, the testatrix could have intended that the three Turnbach nieces were to pay $2,000 upon receiving the whole of the home property but that, if only one of them survived the testatrix, she alone was to pay $2,000 to the estate although she would receive only a one-third interest in the property. Furthermore, if the contention of the appellants were to be adopted, the two surviving sisters would be required to pay to the estate one-third of $17,000 (the stipulated fair value of the home property) notwithstanding that testatrix's second codicil specifically declares that she wanted "to give [her] home to [the Turnbachs] free from any charge." One may divide, in relative material interests, a piece of commercial real estate, but he cannot divide "a home". And, that is what the testatrix devised to her "nieces"—the "Turnbach girls".

In addition to the foregoing positive indications of the decedent's intent, as expressed or clearly implied by

her will and codicils, the residuary clause of the will directly negates the existence of any thought on the part of the testatrix that her residuary legatees should ever share to the extent of a penny in the value of her home property. Thus, the residuary clause apportions the pecuniary legacies to the fund to be derived from the executors' conversion of all of the deceased's personal property. The plainly expressed scheme of the residuary clause is that, if the fund derived from the prescribed conversion proves insufficient to pay in full all of the pecuniary legacies, each was to suffer a proportionate reduction. But, if the fund was more than enough for the purpose, then each pecuniary legacy should share proportionately in the surplus. Nowhere, however, is there the slightest suggestion that the fund for the payment of the pecuniary legacies was to be augmented by any interest in or charge upon the "home" property except for the provision in the first codicil which the testatrix abated a few months later by her second codicil.

In concluding, we cannot do better than adopt the following summary from the thorough opinion of the learned court below: "From the foregoing it is clear that the general scheme of the Will and Codicils requires the conclusion that the testatrix intended no part of her real estate to vest in the complainants, but that she did intend said real estate to vest in such of the three named Turnbach girls as were living at the date of her death. Certainly it could not be supposed that she ever intended Emma Turnbach and Gladys Turnbach to pay to the complainants one-third of the value of her residence."

Judgment affirmed.

DISSENTING OPINION BY MR. JUSTICE BELL:

The basic question involved is whether a specific devise of real estate to three *named* nieces is a devise to them as individuals or a devise to them as a class. It is incomprehensible to me how a Court can interpret such a gift as a class gift; and neither the language of the will, nor the reasons given by the majority support their interpretation of the testatrix's intent.

The devise in question was mentioned four times in testatrix's will and codicils. Testatrix in her will dated February 7, 1946, devised her residence property "to my three nieces, *Edna Turnbach, Emma Turnbach and Gladys Turnbach,** to them and their Heirs forever". There then followed a residuary clause with gifts to 12 named individuals—Edna, Emma and Gladys Turnbach were not included among them. Testatrix's first codicil dated June 25, 1946, refers to "the Turnbach girls" not as a matter of devise, but for the purpose of attaching a condition to the devise of her residence which testatrix made to them in her will. The second codicil was dated September 2, 1946, and provided: "I want everything to be carried out as I have it in my first Codicil except not to have the Turnbachs (*Edna, Emma and Gladys*) to pay $2,000 to the estate for my home. I want to give my home to them, free from any charge." In the third codicil to her will testatrix said: "Whereas, by my said Will I gave and devised my residence property at 131 West Second Street in the Borough of Berwick, Columbia County, Pennsylvania to my three (3) nieces—*Edna Turnbach, Emma Turnbach and Gladys Turnbach,* now I do hereby revoke this said devise and I do give and devise to my said three nieces—*Edna Turnbach, Emma Turnbach*

* Italics throughout, ours.

*and Gladys Turnbach* my said residence at 131 West Second Street in the Borough of Berwick, Pa., together with the southerly portion of the lot upon which it stands . . ."

I agree with the majority's statement of the law: "It is a general rule of construction that, where there is a testamentary bequest or devise to two or more persons, each of whom is specifically named, a *presumption arises that the gift or devise is to such persons as individuals and not as a class* and, consequently, the share of one who predeceases the testator lapses: see Sharpless's Estate, 214 Pa. 335, 338, 63 A. 884; also Hunter's Pennsylvania Orphans' Court Common Place Book, Vol. II, Legacies and Devises, §12 (j) and cases there cited. This rule is, of course, subordinate to the cardinal rule of construction that 'The intention of the testator is the pole star in the interpretation of every will and that intention must be ascertained from a consideration of the entire will, including its scheme of distribution as well as its language, together with all the surrounding and attendant circumstances': Lifter Estate, 377 Pa. 227, 231, 103 A. 2d 670. 'Neither precedents nor rules of construction can override the testator's expressed intent': Long's Estate, 270 Pa. 480, 487, 113 A. 675."

Hunter in his outstanding text authority thus states the law: "Where the individual legatees are named, the rule is that it is not a class legacy and there is no survivorship; the share of one who predeceases the testator lapses: Williams v. Neff, 52 Pa. 326; Yard's Ap., 86 Pa. 125; Sharpless's Est., 214 Pa. 335; Wootten's Ap., 239 Pa. 385; see Peterman's Est., 115 Pa. Super. 121; Martin's Est., 16 Dist. 521; Bateman's Est., 21 Dist. 475; Hipple's Est., 42 Lanc. 170."

Under the language of Mrs. Evans' will and likewise under all the aforesaid authorities, it is clear as crystal that this gift to the three *named* Turnbach girls was a gift to them as individuals and not as a class,* and the share of Edna, who predeceased the testatrix, lapsed and became a part of the residuary estate.

We shall analyze the two reasons given by the majority for their contrary conclusion, together with the cases which they cite in support thereof.

A GIFT TO THREE NAMED INDIVIDUALS

It is difficult to understand how testatrix could more clearly have devised her property to three *named individuals,* viz., her named nieces—Edna Turnbach, Emma Turnbach and Gladys Turnbach. She did not devise the property to "my nieces", which would be a "class gift"; she did not devise the property to "all my nieces, or to such of my nieces as may be living at such or such a time", which would be a class gift; she did not devise her property to her three *named* nieces and the *survivor* of them; she devised her property to her three *named* nieces as *individuals.* To interpret this language as a class gift not only distorts the language of her will but has the effect of (1) changing completely the ordinary meaning of a class gift and the many cases which have uniformly interpreted it, (2) obliterating the long and firmly established distinction between a gift to named individuals and a gift to a class, and (3) negating the principle of lapsed and void legacies which

* The majority opinion, in attempting to establish a "class gift," says: "Not once did the testatrix use the Christian names of the Turnbach sisters *except parenthetically,* even putting such names in actual parentheses in the second codicil as above shown." The first part of this assertion and conclusion is absolutely inaccurate as a reading of the will and the second and third codicils will demonstrate.

all the cases have unanimously held fall into the residuary estate (except as otherwise provided by law) and pass to the residuary legatees under a general residuary clause.

The majority opinion has been able to cite only two cases in the history of Pennsylvania to support its construction that this is a class gift—one of these cases supports this dissenting opinion and the other is clearly inapposite.

In *Sharpless's Estate,* 214 Pa. 335, 63 A. 884 (which is one of the two cases relied upon by the majority), the testator made a gift to named cousins. One of the named cousins died in testator's lifetime. *The Court held that the named cousins took individually and not as a class,* and that there was an intestacy as to the share of the cousin who died in the lifetime of the testator. The Court said (page 338): "The proposition that a gift to several individuals described by their respective names, may be construed a gift to a class, if it is apparent from the will that the testator so intended, is not open to dispute. It is but a corollary of the larger and more comprehensive rule that subordinates everything in the construction of a will, to the expressed intention of the testator. If the diligence of counsel has not been rewarded by finding a case in our reports where such a gift has been held to be a gift to a class, it only goes to show *how convincing to the common understanding* the fact that the donees are severally and individually named is, *that the testator meant that they should take individually and not as a class. This interpretation results in such case,* not because of any technical rule which arbitrarily imposes a definite meaning upon the expression, but *because the expression clearly and unequivocally imports this and nothing else.*"

*Sharpless's Estate,* we repeat, supports our opinion, not the majority opinion.

The other case relied upon by the majority is *Billings's Estate (No. 1),* 268 Pa. 67, 110 A. 767. The facts are set forth in the opinion of the Court (page 69): "Sarah M. Billings died in 1912, leaving a will in which she gave all her residuary estate 'unto my nieces and nephews named to wit [naming them], . . . share and share alike to be paid to them respectively' in the manner stated, with further provision, should any die before receiving his or her share, and without leaving children, the share of such deceased should become part of the residuary fund *and go to the survivors.* In a codicil testatrix revoked the residuary bequests made to a [named] nephew and niece and directed the persons named should not share in the residuary estate and, in lieu of such modification, gave each of the two a stated sum of money. . . .

"In considering the question raised we must bear in mind the well established rules that a codicil and will must be construed together, that the codicil revokes the will only in so far as inconsistent with the original writing and that it serves as a republication of the will as of the date of the codicil. The application of these principles to the present will would prima facie sustain the view that the gift of the remainder, instead of being to ten beneficiaries named, was to eight. This construction would permit both the will and codicil to stand as a whole without conflict in any part and avoid an intestacy as to the revoked shares.

. . .

"A gift to a class has been defined as a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, who are all to take in equal or other definite pro-

portions, the share of each being dependent for its amount upon the ultimate number: 40 Cyc. 1473. The members who are to constitute the class are to be determined at the time of distribution: Haskins v. Tate, 25 Pa. 249. The question whether a gift is to a class or to the individuals constituting a class depends, of course, upon the intention of the testator as indicated by the language of the will.

"If, at the time of making the gift, the number of beneficiaries is certain and the share each is to receive is in no way dependent in amount upon the number who shall survive, it is not a gift to a class, but to the individuals, *as, for instance, where the individuals are named and their shares specified:* Sharpless's Est., 214 Pa. 335. Even though the beneficiaries are named the gift may still be one to a class if it otherwise appears from the will that the testator so intended and that the enumeration was merely for the purpose of fixing with certainty the members of the class: Sharpless's Est., supra."

The Court then held that considering the will and codicil together "Testatrix . . . clearly indicated an intention to divide the residue among the remaining eight [named] nephews and nieces *and the survivor or survivors of them,* if any died without issue." The language of Mrs. Billings and her intent, as expressed in her will and codicil were clear—she gave her residuary estate to her eight named nephews and nieces and (in default of children) the survivors and survivor of them. That case was undoubtedly correctly decided but is clearly inapposite to the language of Mrs. Evans' will and lends no support to the majority opinion either (a) on the point of a class gift, or (b) on the construction that Mrs. Evans intended a gift to her three *named* nieces *and the survivors of them.*

WHAT WAS THE TESTATRIX'S INTENTION?

I believe the intention of Mrs. Evans is clear from (1) the language of her will, and (2) all the pertinent authorities in Pennsylvania. However, since the majority believe otherwise, I shall further analyze the language of her will (and codicils) and the reasons given by the majority for its conclusions.

The majority opinion says that the testatrix intended to give her residence property "to the 'Turnbach girls' *or such of them as survived her*".* This wipes out the distinction which has heretofore always been made in the mind of testators and in all the cases between a gift to A and B and a gift to A and B and the survivor of them. The temptation to find that the testatrix intended a gift to the survivors, *by adding these words of survivorship,* is great. But that is exactly what the testatrix did not provide and we have no right to rewrite her will. If that had been her wish and intent she could and would have clearly said so because she knew how to so provide, having specifically provided in her will: "In the event either of said Executors fails to qualify or dies prior to the settlement of my estate, then and in that event I direct that *the survivor* shall continue as sole Executor and have all of the powers hereinbefore granted to my Co-Executors".

The majority opinion then says: "In addition to the foregoing positive indications of the decedent's intent, as expressed or clearly implied by her will and codicils,

---

* The majority opinion attempts to buttress this interpretation by asserting "One may divide, in relative material interests, a piece of commercial real estate, but he cannot divide 'a home'." That, on analysis, is either inapposite or illogical. The testatrix herself divided the residence among Edna, Emma and Gladys Turnbach and the majority opinion divides it between Emma and Gladys Turnbach, who survived the testatrix.

the residuary clause of the will *directly negates* the existence of any thought on the part of the testatrix that her residuary legatees should ever share to the extent of a penny in the value of her home property." That well illustrates the fundamental fallacy of the majority on this point, namely, the intention of the testatrix as disclosed by the language of her will.

Ever since the Law of Wills became established, it has been the settled and unquestioned rule that—unless the testator clearly provided otherwise—(a) a devise or legacy lapses (except where the gift is to children or issue *) if the beneficiary fails to survive the testator, and (b) the lapsed devise or legacy falls into and becomes a part of the residuary estate and goes to the residuary legatees. That principle of law which has existed for over one hundred years is the one principle that a testator (who is presumed to know the law) *actually* does know. The reason is obvious, it expressed the desires and intentions of the testator based upon the experience of mankind.

A general residuary clause is a catch-all for everything—lapsed and void legacies, illegal legacies, revoked legacies, future acquired property, and every interest whether immediate or remote, undisposed of, unremembered or unknown, unless it is manifestly excluded by other parts of the will: *Ingham's Estate,* 315 Pa. 293, 172 A. 662; Wills Act of April 24, 1947,** P. L. 89, §14(9), 20 PS §180.14(9).

---

* The class was enlarged by the Act of May 6, 1844, P.L. 564, §2 to include a brother or sister of the testator or their children.

** The Wills Act of 1947, §14(9) once again reiterated the well established principle that "A devise or bequest not being part of the residuary estate which shall fail or be void because the beneficiary fails to survive the testator or because it is contrary to law or otherwise incapable of taking effect or which has been revoked by

A testator who includes a residuary clause in his will *knows and intends* it to include all his property of every kind and character whatsoever which has not been validly disposed of in other parts of his will, and his will must be read and his intention must be interpreted with this knowledge and intent in mind. If a testator's intent is to be interpreted as the majority do in this case, it will mean that a lapsed or void legacy would not become a part of the residuary estate because the testator specifically said in his will that he wanted it to go to William Brown, who predeceased him, or to a Church if he died in 30 days. Such a legacy, therefore, could not pass to the residuary legatees, under the majority theory, because the testator said clearly and specifically he wanted it to go to Brown or to the Church, so he could not have wanted or intended it to go to the residuary legatees, unless they were Brown or the Church. Similarly, it has been unsuccessfully argued that a residuary clause cannot include and dispose of unknown property or future acquired property because since the testator did not know about it he could not have *intended* to bequeath it in his residuary devise.

The line of reasoning adopted by the majority was advocated but rejected in many cases, the latest of which is *Jull Estate,* 370 Pa. 434, 88 A. 2d 753. In *Jull Estate,* the testator in the Fourth paragraph of his will exercised a power of appointment. The appointment failed because the will was attested by only one witness

---

the testator or is undisposed of or is released or disclaimed by the beneficiary, if it shall not pass to the issue of the beneficiary under the provisions of clause (8) hereof and if the disposition thereof shall not be otherwise expressly provided for by law, shall be included in the residuary devise or bequest, if any, contained in the will."

instead of by the two witnesses required by §6 of the Wills Act of June 7, 1917, P.L. 403. The Court held that the appointed estate fell into the residuary estate and passed thereunder to the residuary legatees who were different than the appointee. The Court said (page 440):

"Jarman on Wills, 7th Ed., thus states the law (page 786); 'The fact that an appointment has been actually made will not show an intention to exclude the appointed property from a general residuary gift, when the appointment fails by lapse, or through uncertainty, or otherwise, or is revoked.'

"In Chase National Bank v. Central Hanover Bank & Trust Co., 265 App. Div. 434, 39 N.Y.S. (2d) 541 (1943), the Court specifically held 'that the residuary clause carried with it the appointive property previously attempted to be disposed of, but which was invalidly appointed.'

"In McLean v. McLean, 158 N.Y.S. 59 (1916), aff'd. in 174 App. Div. 152, 160 N.Y.S. 949, aff'd. in 223 N.Y. 695, 119 N.E. 1056, the Court held that property ineffectually appointed passed by a general residuary clause and said (page 66): '. . . every testator is presumed to know that unless he, in some way, speaks by his will to the contrary, property ineffectually disposed of for any reason will fall into his residuary estate and pass by the residuary clause of the will. Indeed, to prevent intestacy, he is presumed to intend that it shall so pass. . . .

" 'I am also unable to agree with the argument that a clearly expressed intention that the property should go to some one other than his wife shows an expressed intention that it should not pass to her under his residuary clause. Such an intention can have no greater weight than the clearly expressed intention of a testator

that a void bequest or devise shall go to some one other than his residuary legatee. But, as we have seen, such a void bequest or devise will pass to the residuary legatee to effectuate what the law deems *testator's controlling intention, . . .'.*

"The same line of reasoning which appellants employ in this case with respect to a void appointment would apply equally as well to a void or lapsed bequest; yet in such a case it is clearly settled that a lapsed or void legacy does not show 'a contrary intention,' but indisputably becomes a part of the residuary estate and passes under the residuary clause in the will: Carothers's Estate, 300 Pa. 185, 150 A. 585; Wood's Estate, 209 Pa. 16, 57 A. 1103; Bricker's Estate, 335 Pa. 300, 6 A. 2d 905; Wills Act of 1917, supra, §§6, 11, 15(c); Hunter, Pennsylvania Orphans' Court Commonplace Book, Vol. II, §19(h), p. 851.

"Hunter thus states the law (p. 851): '19(h). Residue includes all property not effectually disposed of. Such estate as shall fail or be void by reason of the death of the devisee or legatee in the lifetime of the testator, or by reason of such devise or bequest being contrary to law or otherwise incapable of taking effect, or which shall be revoked by the testator, shall be included in the residuary devise or bequest: Wills Act of 1917, P. L. 403, §15(c), 20 PS 253. A residuary gift carries with it, and is presumed to have been so intended, not only all the estate which remains not specifically disposed of at the time the will is executed, but all that, for any reason, which is illy disposed of, or fails as to the legatees originally intended: Wood's Est., 209 Pa. 16.'"

In *Wood's Estate,* 209 Pa. 16, the Court quoting with approval the renowned Judge PENROSE, said (pages 18-19): "'The foundation of this general rule

in respect of lapsed legacies it is said in 2 Williams on Executors, 1569, is that the residuary clause is understood to be intended to embrace everything not otherwise effectually given; because the testator is supposed to "take the particular legacy away from the residuary legatee, only for the sake of the particular legatee; so that upon failure of the particular intent the court gives effect to the general intent." ' "

The effect of the majority opinion by its (mis)interpretation of the intention of this testatrix is (1) to abolish (a) the long established distinction between a gift to named individuals and a gift to a class, and (b) the distinction between a gift to A and B and a gift to A and B and the survivor of them, and (2) to abolish the principle of lapsed and void legacies, and (3) to negate and nullify the effect of a general residuary clause which is so well and long established that it is known as a catch-all to every person who makes a will.

For all these reasons, I would hold that the gift to Edna Turnbach lapsed by her death before the testatrix, and became a part of the residuary estate.