Syllabus.

## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

WILDBERGER & OTHERS v. CHEEK'S EX'OR & OTHERS.

BROWNING & OTHERS v. SAME.

CASSEY & OTHERS v. SAME.

April 8, 1897.

Absent : RIELY, J.

1. WILLS—*Effect of death of legatee before the will was written.*—A legacy bequeathed to a legatee who was dead at the time the will was written does not lapse or become void, but, under the provisions of sections 2521 and 2523 of the Code, passes to the issue of the legatee who survive the testator, unless a different disposition thereof is made or required by the will.

2. WILLS—*Case at bar—General class followed by enumeration of beneficiaries.*—A will which provides by a prior clause for the children of a deceased sister of the testator, contains a residuary clause declaring "all the rest and residue of my estate * * * * I direct my executors to distribute equally among all my nieces and nephews. They are the following : The children of my sisters (naming four sisters and two nephews). I wish the whole number ascertained and the sum divided by this number, and give each one the same sum ; but only those who are alive at my death are to receive any portion of it * * * *" The children of the deceased sister were not amongst those enumerated, and there was no extrinsic evidence sufficient to show that they were omitted through inadvertence.

   *Held :* Taking the whole will together, and considering the extrinsic evidence also, the residuum of the estate is to be divided only amongst the class specifically enumerated, and the children of the deceased sister are to be omitted.

3. WILLS—*Case at bar—Misdescription of a note directed to be paid—Ademption.*—A will contains this clause : " I have given my negotiable note to Anne E. Cassey, of Detroit, Mich., for twelve thousand dollars, which note I wish paid to her as early after my death as practicable, whether due or not, with interest at six *per cent. per annum,* from the date of my

death till paid. I direct this sum promptly paid. She resides at Detroit, Mich. In case of her death, to be paid as stated upon the back of the note." The only note Anne E. Cassey had, or ever had, given her by the testator was a note for $10,000, payable to A. E. Cassey and others. It was endorsed, "A. E. Cassey, $4,500; George William Cheek, $4,500; A. Milligan, $1,000; to be paid in the proportion to the parties named above."

*Held:* The testator intended to direct the payment of the note for $10,000, and did not intend a legacy to Anne E. Cassey of $12,000, with an ademption of her interest in said note.

Appeals from a decree of the Corporation Court of the city of Danville, pronounced June 4, 1895, in the chancery cause of *Cheek's Ex'ors* v. *Cheek's Devisees*, instituted for the purpose of having the will of William F. Cheek construed by the court and the estate administered under the direction of the court, in which suit appellants were defendants.

*Affirmed.*

The opinion states the case.

*Cabell & Cabell* and *R. H. Wildberger*, for appellants in *Wildberger* v. *Cheek's Ex'ors.*

*Green & Miller, N. T. Green* and *Chambliss & Chambliss* for appellees in *Wildberger* v. *Cheek's Ex'ors.*

*G. D. Gray* and *T. E. Grimsley*, for appellants in *Browning* v. *Cheek's Ex'ors.*

*Green & Miller, R. H. Wildberger* and *Cabell & Cabell*, for appellees in *Browning* v. *Cheek's Ex'ors.*

*Berkely & Harrison* and *Christian & Christian*, for appellants in *Cassey* v. *Cheek's Ex'ors.*

*Green & Miller, R. H. Wildberger* and *Cabell & Cabell*, for appellees in *Cassey* v. *Cheek's Ex'ors.*

Cardwell, J., delivered the opinion of the court.

The appeal in each of those cases is taken from a decree of the Corporation Court of the city of Danville, construing the will of William F. Cheek, deceased, in the suit of *Cheek's Ex'ors.* v. *Cheek's Devisees, &c.,* and though a separate and distinct question is presented in each, they were argued here together, and will therefore be disposed of in this opinion, in the order named.

In the 4th clause of the will, dated October 20, 1894, the testator bequeathed to his sisters twenty-five thousand dollars, each. One of these sisters was Mrs. Elizabeth Houston, who had died at her home in Tennessee before the death of the testator, and shortly before the execution of his will, leaving issue who survive the testator, viz: a daughter, Mrs. Sarah Jane Edwards, and a granddaughter, Miss Fannie Hamblett, who are the appellees here. These being the undisputed facts the sole question presented in the first of these appeals is: Does the legacy to Mrs. Elizabeth Houston of $25,000 lapse or become void, because of her death before the date of the will, or does the legacy pass to the issue of the legatee, "who survive the testator," there being no "different disposition thereof made or required by the will."

The 4th clause of the will is: "I give and bequeath to my sisters, Elizabeth Houston, Caroline J. Wildberger, Sarah A. Waggener, and Mary M. Stokes, twenty-five thousand dollars each, the portion given to my sister Mary M. Stokes to be held by her as her separate estate free from the debts, contracts, and control of her husband and disposed of by her as she may think proper."

Section 2523 of the Code of 1887, provides: "If a devisee or legatee die before the testator, leaving issue who survive the testator, such issue shall take the estate devised or bequeathed, as the devisee or legatee would have done if he had survived the testator, unless a different disposition thereof be made or required by the will."

There is no ambiguity whatever in the 4th clause of the

will, and it is therefore this section of the Code that we are called upon to construe.

It must be conceded that if Mrs. Houston had died in the interval between the execution of the will and the death of the testator, her issue would have taken, and the legacy would not lapse or become void, *Wood* v. *Sampson*, 25 Gratt. 845, but it is contended that because her death took place prior to the execution of the will, the contrary is the result, and the legacy becomes a part of the residuum of the estate.

Section 2521 of the Code, which is declaratory only of the common law rule as regards personalty, but changes it as to realty, provides: "A will shall be construed with reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will." Therefore the testator's will as to the legacy to Mrs. Houston speaks, under section 2521 as well as at common law, from the date of his death, and section 2523 takes effect as to the legacy from the same date. The statute takes no account of precedent events, other than the death of the devisee or legatee, and does not restrict its operation to cases only in which the death of the devisee or legatee occurs after the execution of the will and before the death of the testator. Its language is: "If a devisee or legatee die *before* the testator, *leaving issue who survive the testator*, such issue shall take," &c. The only conditions it imposes are: The devisee or legatee must have died before the testator, leaving issue who survive the testator. It does not impose the condition that the devisee or legatee shall be "*in esse*" at the date of the execution of the will, but the policy of the law is plainly disclosed, viz: to uphold and give effect to a devise or legacy rather than to allow it to fail for the want of a person or persons "*in esse*" to take it. The statute, now section 2523 of the Code, is taken from the English statute, 1 Victoria 33, which is engrafted also in some form upon the statute law of

nearly every State in the Union. In some of them it applies only to cases in which the devisee or legatee is a child or other descendant of the testator. In others, it extends to cases in which the beneficiary is a child or other relation; and still others (Virginia included), to any legatee or devisee who dies before the testator, leaving lineal descendants surviving at the time of the testator's death. 13 Amer. & Eng. Enc. Law, 38.

In commenting upon the English statute, Jarman in his work on Wills, Vol. 1, (5th Amer. Ed.), 640, 641, says: "It does not substitute the surviving issue for the original devisee or legatee; but makes the gift to the latter take effect, notwithstanding his death in the testator's life time, in the same manner as if his death had happened immediately after that of the testator, and whether it (the death of the devisee or legatee) happened before or after the date of the will, though not if it happened before the act came into operation." Citing *Mower* v. *Orr*, 7 Hare 473; *Winter* v. *Winter*, 5 Hare 306; *Wisden* v. *Wisden*, 2 Sm. & Gif. 396; *Barkworth* v. *Young*, 4 Drew 1.

In construing the statute of Maine, which extends only to cases in which the beneficiary is a child or relative of the testator, the Supreme Court of that State said: "We are satisfied, upon reason, principle, and authority, that the lineal descendants of a relation of the testator having a bequest in a will are entitled to the legacy given to their ancestor by virtue of R. S. C. 74, sec. 10, though the original legatee was in fact dead at the date of the will. The statute is in furtherance of what may fairly be presumed to have been the intention of the testator, and in order to effect its object it should be construed liberally. The adverse argument is based upon the distinction between lapsed and void devises, and the assumption that the statute takes effect only in cases of lapsed. But no such limitation of its effect is found in the statute, the intent of which obviously is to save to the lineal descend-

ants of the person named as devisee in the will, the benefit of
a devise which would at the common law fail of effect by rea-
son of the death of the original devisee before the testator.
The statute has regard rather to the class of individuals for
whose relief it is interposed than to any technical distinction
in the manner of the failure against which it proposes to guard
them.     As to them the result at. common law would be the
same whether their ancestor died before or after the date of
the will, if he died before the testator.     Against this result,
in either case, the statute places a barrier." *Nutter* v. *Vick-
ery,* 64 Me. 498.

What was said by the court in that case is, under the facts
and circumstances .of this, and the broad provision of our stat-
ute, entirely applicable, and the reasoning we think unanswer-
able.     See also *Barnes* v. *Huson,* 60 Barbour 598; *Minter's
Appeal,* 40 Pa. St. 111, 114; *Darden* v. *Harrill,* 10 Lea
(Tenn.), 421, 428; and *Taylor* v. *Conner,* 7 Ind. 115.

It is true that in *Barnett's Appeal,* 104 Pa. St. 342, to
which we have been cited, the Supreme Court of Pennsylvania
held that a bequest or devise to sisters of the testator, who
were dead when the will was made, lapsed, but this conclusion
was reached, as the opinion shows, by reason of the fact that
the case was not within the provisions of the statute—the
statute not extending to the children of a brother or sister
where the testator leaves lineal descendants, and the testator
in that case left a lineal descendant.

In *Minter's Appeal, supra,* the sister of the testator to
whom he made a bequest had died some years before the will
was made, but left. issue who survived the testator—the tes-
tator leaving no lineal descendants.     The court in that case
said: "We cannot doubt that the act of May 6, 1844, saves
this bequest to the testator's sister from being void, though she
was dead when the will was written, having left children that
survived the testator.     This interpretation of the law is so
just, and presents itself so naturally, that we need waste no

words about it. No amount of verbal criticism can make it clearer, but as is usual in such cases, would only darken and confuse the thought.''

We have been cited to no adjudged case sustaining the contention of appellants in which the statute construed is similar to section 2523 of our Code. This section made a sweeping change from the common law doctrine of lapsed or void legacies, declaring what the law should be in the future in no uncertain language, and our courts cannot make exceptions and uphold distinctions where the plain letter of the law recognizes none.

We are of opinion that the decree of the lower court, holding that the legacy given to Elizabeth Houston by the 4th clause of the testator's will, at his death became vested in and should be equally divided between the appellees, Sarah Jane Edwards and Fanny E. Hamblett, is in accordance with the true interpretation of section 2523 of the Code, and should be affirmed.

The second appeal, *Browning et als* v. *Cheek's Ex'ors*, involves a construction of the 6th or residuary clause of the will of William F. Cheek, deceased. It is, so far as need be quoted, as follows:

''All the rest and residue of my estate, after paying my funeral expenses and erecting a small monument to my memory, &c.  *  *  *  I direct my executors to distribute equally among all my nieces and nephews. They are the following: The children of my sisters, Caroline I. Wildberger, Sarah A. Waggener, Elizabeth Houston, Mary Margaret Stokes, Thomas H. Cheek, and my nephew Thomas Hughes, son of my deceased sister. I wish the whole number ascertained and the sum divided by this number, and give each one the same sum; but only those who are alive at my death are to receive any portion of it.''  *  *  *

It appears that besides the persons mentioned in this clause of his will, the testator had a brother, Mark R. Cheek, and a deceased sister, Jane Browning. Jane Browning had five

children, all of whom are adults, and are the appellants here. They contend that this clause must extend to them, because the testator used the words "all my nieces and nephews," and that it is not cut down by the specific enumeration of those whom he wished to take under this clause, but that their names were omitted through inadvertence, and that the court should include them and allow them to share in the residuum thereby disposed of; but the court below held that by the terms of this 6th and residuary clause of his will, the testator excluded the appellants from the class which was to take the residuum of his estate, by limiting the number of the class to those specifically named therein.

This question is, of course, to be determined by what was intended by the testator, and this is to be arrived at by a construction of the whole will. We do not mean to say that where the intention of the testator is left in doubt by the language he employs in his will, extrinsic evidence cannot be resorted to for the purpose of showing the intention of the testator, the state of his family and of his property at the time of making his will, or that evidence may not be received as to any facts known to the testator, which may reasonably be supposed to have influenced him in the disposition of his property, and as to all the surrounding circumstances at the time of making the will. *Wootten* v. *Redd's Adm'r*, 12 Gratt. 208. But, as was said by Keith, P., in *Waring* v. *Bosher*, 91 Va. 286: "The object of courts in construing wills is to arrive at the true intent of the testator, but that intent is to be gathered from the language used. 'Conjecture,' it has been said, 'cannot be permitted to usurp the place of judicial conclusion, nor supply what the testator has failed sufficiently to indicate.' The intention must be collected from the words of the will, for the object of the construction is not to ascertain the presumed or supposed, but the expressed intention of the testator, that is, the meaning, which the words of the will, correctly interpreted, convey."

In the first clause of the will, this provision is made for appellants: "I also give and bequeath to the children of my sister, Jane Browning, namely: Montgomery, Miss Alice Browning, Mrs. Mary J. Yates, Mrs. Dora Jane Jolliffe, and Mrs. Mollie Rosson, four thousand dollars each, for those that are married, to be for their sole and separate use, free from the debts, contracts, and control of their husbands;" and in the fifth clause his nieces, children of Mrs. Jane Browning, are given all testator's chamber and parlor furniture, with specific directions that it be shipped, freight paid, to Mrs. M. J. Yates, to be divided by her with her sisters as she deemed just and right.

The only extrinsic evidence in the record, upon which appellants rely to sustain their contention that it was through inadvertence the testator omitted them when the sixth clause of his will was written, is a letter from him to Mrs. Yates, dated June 25, 1894, in which he speaks of having received the sad news of the death of his sister Elizabeth Houston the week before, and says: "She and your mother were my favorite sisters, if I have any preference, I was with her all the earlier part of my life," &c.   But in addition to the fact that this letter is more expressive of the writer's affection for his sister Mrs. Houston who had just died, than declaratory of his preference of her and Mrs. Browning over his other sisters, which as a fact he questions, it discloses that the children of Mrs. Browning had been objects of his bounty, calling upon him (at least some of them), when in distress or need for assistance.

We do not think it a reasonable conclusion to be drawn from this letter, or from it and the will together, that the testator, a man of intelligence and business sagacity as he is shown to be, by inadvertence, omitted the children of his sister Mrs. Browning, when the sixth clause of his will was written, when they were remembered in the fifth clause, and given a liberal legacy by name in the first.   It may be worthy of

note that he omitted from the sixth clause also his brother, Mark K. Cheek, to whom he had given a legacy of $25,000 in the fourth clause, though it does not appear that the latter had children.

There is no repugnancy between the sixth and any other clause of the will, and the question after all, is: What was the intention of the testator as to the children of his sister Mrs. Browning, when he came to a disposition of the residuum of his large estate?

The will says: "All the rest and residue of my estate * * * I direct my executors to distribute equally among all my nieces and nephews." And again: "I wish the whole number ascertained, and the sum then divided by this number, and give each one the same share. * * *" Now if the testator intended that all his nieces and nephews, including the children of Mrs. Browning, should participate in this distribution, why insert between the words "all my nieces and nephews," and the words, "I wish the whole number ascertained," &c., the words: "They are the following: The children of my sisters, Caroline I. Wildberger, Sarah A. Waggener, Elizabeth Houston, Mary Margaret Stokes, Thos. H. Cheek, and my nephew Thomas Hughes, son of my deceased sister?" This clause was entirely useless, if the testator intended that "all his nieces and nephews" were to be included.

Much stress is laid by counsel upon the fact that a full stop is made at the end of the words "all my nieces and nephews," and that the following sentence: "They are," &c., begins with a capital. It was equally as unusual to use a period at the end of the words preceding: "I direct my executors to distribute equally among all my nieces and nephews." No meaning can be attributed to the period at the end of the preceding words, "I direct my executors to distribute equally among all my nieces and nephews," and we can attach no greater importance to the punctuation in the one instance than in the other. Are all the words used by the testator to

pcint out to his executors which of his nieces and nephews he intends shall have the residuum of his estate to be discarded, in order to give full force and effect to the word "all" in the preceding sentence "all my nieces and nephews?" We think not, and know of no rule of construction that requires this to be done. It will not do to say that if the testator intended to exclude appellant he would have said so, as the converse of that proposition is at the least equally sound.

We are cited to the case of *Patch* v. *White*, 117 U. S. 210, where the court discusses how a latent ambiguity in a will may be disclosed and removed, and in which it is held that, "where the testator devised 'lot 6' in a certain block, to a brother, and disposed of the remainder of his estate to others, and it appeared that he did not own lot 6, but did own lot 3 in said block, and that lot 3 was otherwise properly described in the will," that lot 3 had been lawfully devised, and was therefore substituted for lot 6. But that is not this case.

Appellants rely also upon the general rule laid down at page 428 of 29 Amer. & Eng. Enc. L. and cases cited in support of the text. That rule is: "Where the testator has described the class as consisting of a specific number, which varies from the actual number, the numerical statement is wholly disregarded," and the authorities cited sustain the text. But is that this case?

"All," when used with reference to a class would of course include all of the class, unless words of qualification or restriction are used, in which case the word would have only such influence as the qualifying or restrictive language would permit. As we have seen, "all my nieces and nephews" would have been sufficient to include appellants as well as the children of Mark R. Cheek, if he had any, in the sixth clause of the will, had the testator so intended and stopped there; but he added: "They are the following," naming all his sisters, his brother, Thos. H. Cheek, and his nephew Thomas Hughes, omitting only his sister Mrs. Browning and his brother Mark

R. Cheek. He was therefore doing a vain or useless thing, if this addition was not intended to qualify and restrict the preceding language used. It cannot, we think, be demonstrated to a certainty that it was used for any other purpose. Neither the general scheme adopted for the disposition of his property as disclosed by the whole will, nor the language used by testator, would justify excluding this qualifying and restricting portion of the sixth clause of his will, by the exclusion of which alone, can appellants be included in the class who take under that clause.

We are urged, however, to the view that the words: "I wish the whole number ascertained, and the sum then divided by this number," &c., which follow the sentence naming the class to take the residuum of the estate, must be referred back to the word "all;" but these words may as well be taken, if not necessarily so, as referring to the sentence, "They are the following: The children," &c., as to the word "all," and it therefore remains that these words must be discarded in order to refer the sentence "I wish the whole number ascertained," &c., back to the word "all."

It follows that we are of opinion that there is no error in the decree excluding appellants from the sixth or residuary clause of the will.

The appeal of *Cassey &c.* v. *Cheeek's Ex'ors*, involves a construction of the third clause of testator's will, which is as follows:

"I have given my negotiable note to Anne E. Cassey, of Detroit, Michigan, for twelve thousand dollars, which note I wish paid to her as early after my death as practicable, whether due or not, with interest at six *per cent. per annum*, from the date of my death until paid. I direct this sum promptly paid. She resides at Detroit, Michigan. In case of her death to be paid as stated upon the back of the note."

The note and the only note that Anne E. Cassey had or ever had, given her by the testator, is the following:

"  Danville, Va., February 19th, 1894.
"10,000.

One year after date, I, W. F. Cheek, principal and . . . .
. . . . . . securities, promise to pay A. E. Cassey and others,
or order, without offset, negotiable and payable at the bank-
ing house of Johnston & Cheek, Danville, Va., ten thousand
dollars. Value received. Homestead and all other exemp-
tions waived.

W. F. CHEEK.

Due. . . . . . . . . .

Endorsed.

A. E. Cassey, - - - - - - - - - $4,500
George William Cheek, - - - - - 4,500
A. Milligan, - - - - - - - - - 1,000

To be paid in the proportion to the parties named above."

It is contended for appellants that this third clause of the
will gives to Anne E. Cassey a legacy of twelve thousand
dollars, an ademption of the debt due on the note only to the
extent of her interest therein, viz: $4,500, and not merely a
direction to testator's executors to pay this note of $10,000,
as was held by the court below.

Much of the able argument by counsel for appellants in
support of their contention proceeds upon the theory that
clause third of the will does in fact give Anne E. Cassey a
legacy of twelve thousand dollars, but this is the very ques-
tion that is met at the threshold.

If a legacy is in fact given to Anne E. Cassey by this clause it
would seem too clear for argument that it is to be treated as a
satisfaction of the note only to the extent of her interest
therein, and it is equally as clear that if she had held a note
for $12,000 and the testator spoke of it as a $10,000 note,
the executors would have been required to pay the $12,000.
She in fact, however, held only the $10,000 note which the
testator had given her with accompanying directions as to
how she was to appropriate the money when she received it,

and it is to this note the testator had reference when he wrote the third clause of his will, unquestionably.

He uses no words of gift in this clause of his will, unless they be: ''I direct this sum promptly paid.'' Reading these words in connection with the entire clause, to what sum does he have reference? It cannot be the "twelve thousand dollars," for he has not before made a bequest of twelve thousand dollars, but the language used is: ''I have given my negotiable note to Anne E. Cassey, of Detroit, Michigan, for twelve thousand dollars, which *note* I wish paid to her as early after my death as practicable, whether due or not, with interest at six *per cent. per annum* from the date of my death till paid.'' Necessarily, it would seem that "this sum" has reference only to the amount due on the note at testator's death, or when paid. It is hardly conceivable that a man of intelligence who intended to give a legacy of twelve thousand dollars to an object of his bounty would have employed the language that this testator employs in the third clause of his will. True, he makes a mistake as to the amount of the note he had given, but his direction is to pay the note, not twelve thousand dollars, to her, and this direction to pay it to her is readily understood when read in connection with the note and the endorsement thereon. He had given the note to her, and at the same time, endorsed on it how she was to appropriate the money when she received it, and it is evident that when he came to make his will he was willing to trust her to carry out his instructions should she receive the money in her lifetime, hence he directs his executors to pay it to her, giving direction as to where they could find her, and follows it with a further direction that: ''In case of her death to be paid as stated upon the back of the note.'' What ''to be paid'' in case of her death? Not twelve thousand dollars, but the amount of *this note*, showing that it is of *this note* that he is speaking throughout this clause of his will, though in error

as to the amount.    The note is for $10,000 and the endorsement on it disposes of $10,000, not $12,000.

It has been well said that in the construction of wills adjudicated precedents have but little application except to present the general rules and principles, and it may be added as equally well settled that rules of interpretation will not be invoked except when the language used by the testator is of a doubtful construction.    The third clause of testator's will admits of no doubt as to what he intended, and hence we have not deemed it necessary to review the numerous authorities cited in the argument before us, and so earnestly pressed by counsel.

We are of opinion that this clause of the will is correctly construed by the court below, and the decree in this respect must also be affirmed.

*Affirmed.*