## Jones Estate.

Argued December 7, 1942.

Be-
fore, KELLER, P. J., BALDRIGE, RHODES, HIRT and KEN-
WORTHEY, JJ.

*Victor J. Roberts,* for appellants.

*Frederick B. Smillie,* of *Smillie & Bean,* for appellees.

*Wallace M. Keely,* for appellees.

OPINION BY HIRT, J., February 1, 1943:

Testatrix, Ellen C. Jones, by her will, bequeathed
her entire residuary estate, after the payment of her
debts, to her daughter Lidie R. Jones for life and
upon her death to her brother Joseph C. Jones, for
life, with remainder to his four named children "share
and share alike, absolutely." The will is dated July
9, 1918. Testatrix added the following codicil on De-
cember 12, 1919: "Instead of giving all that remains
after Lidie's death to Brother Joseph, I desire that
brother Charles be given one third of it." Joseph died
in 1920 and on March 8, 1923 testatrix added this
second codicil: "I give, devise and bequeath to my
brother Jonathan R. Jones, or to his heirs and assigns
one-third of my estate hereinbefore devised to my
brother Jos. C. Jones." Jonathan died in 1925.

Testatrix died July 8, 1927, survived by her daughter
Lidie and her one brother, Charles, and the children
of each of her three brothers, including all four of the
children of Joseph named in the original will as the

ultimate beneficiaries of the corpus of the estate. Charles died in 1931 and Lidie died in 1940. Her death was the occasion for the filing of an account by the trustee of the estate. On the audit of the account the question was whether the fund for distribution should be awarded to, and divided among, the four named children of "Brother Joseph" *or,* per stirpes, to the issue of each of the children of the brothers Joseph, Charles, and Jonathan. The children of Charles and of Jonathan contended that the two codicils vested absolute interests, one-third to Charles and one-third to Jonathan and that the interest of each descended to his children. The living children of Joseph and the representatives of the estates of two who have died, the appellants herein, interpreted the codicils as giving no more than equal life estates to Charles and Jonathan because Joseph was given but a life estate by the original will, and since both Charles and Jonathan are dead, they contended that they are entitled to the entire estate to the exclusion of the children of Charles and Jonathan. The adjudication here in dispute, adopted neither of these views. The lower court found that the two codicils gave equal one-third life estates to Charles and to Jonathan with remainders over to the children of each, per stirpes, (the same kind of estates given to Joseph and his children under the original will) and ordered distribution accordingly.

It is elementary that the will and the codicils must be construed together as one instrument; the very purpose of a codicil is to alter or modify the will, but a provision of the will must be considered revoked in whole or in part if necessary to give effect to the codicils. *Foster's Estate,* 324 Pa. 39, 187 A. 399. Construed together, codicils revoke the will only so far as repugnant to it or inconsistent therewith. *Dutton's Estate,* 301 Pa. 94, 151 A. 697. The question remains one of interpretation—to ascertain the intention of

testatrix in the will in question as affected by the codicils when construed together as one instrument. The choice of language in the codicils is not controlling. If the intention is clear, restrictive words are ineffective and, conversely, words of absolute gift may be disregarded "to declare the estate created to be a limited estate" merely. *Byrne's Estate,* 320 Pa. 513, 181 A. 500.

The original will was artistically drawn in apt language, undoubtedly by a lawyer. The codicils were not, but were added by testatrix in her own language. In ascertaining her intent, it is important, especially in a case of this kind, where the language is not clear, that we put ourselves in the place of the testatrix and interpret the codicils in the light of all the circumstances attending their execution which probably influenced her. *Lerch's Estate,* 309 Pa. 23, 159 A. 868. "The law will impute to a testator's words such a meaning as, under the circumstances, will conform to his probable intention and be most agreeable to reason and justice": *Jackson's Estate,* 337 Pa. 561, 12 A. 2d 338.

The principal concern of testatrix was her daughter Lidie to whom she gave the life use of her entire estate. Her next interest was her brother Joseph whom she preferred in the original will, to the exclusion of her other two brothers, by giving him a life estate after Lidie's death with remainder over on his death to his four children, share and share alike. Both Lidie and Joseph were still living when testatrix added the first codicil. Its language is not clear; it misstates a fact. The original will did not give Joseph "all that remains after Lidie's death" and standing alone it might be difficult to determine whether testatrix intended in the first codicil to give her brother Charles one-third of her estate absolutely, or one-third for life terminating with his death, or for life with remainder to his

children. We think it clear that any uncertainty of intention in the first codicil is dispelled by the language of the second and the circumstances attending its execution. Lidie, then, was still living but Joseph had died three years before; the life estate to Joseph under the will never vested in him. Testatrix's brothers Charles and Jonathan were still living. She undoubtedly, at the time of both codicils, considered her bequest to Joseph for life with remainder to his children, as the equivalent of "giving all that remains after Lidie's death to my brother Joseph" as recited in the first codicil. The reference in both codicils to the estate bequeathed to Joseph in the will must be construed to mean the estate given to Joseph's branch of the family. The intention in the codicils was to admit each of her remaining two brothers to a share in the estate on the same terms as she had provided for Joseph in the will. The original will sets forth clearly the plan or scheme of distribution to Joseph and his children. The casual language of the codicils, when referred to the artistic language of the will determining the interest of Joseph and his children must be similarly construed in ascertaining the interests of Charles and Jonathan and their children. Codicils are "to be interpreted in accordance with the general scheme of the will": *Roats's Estate*, 30 Pa. Superior Ct. 521; *Whelen's Est.*, 175 Pa. 23, 34 A. 329. Charles and Jonathan were each given a life interest in one-third of the estate with remainders to their children and the interests of Joseph's children were reduced accordingly. This conclusion is consistent with the rule that where the language of a will is not clear the law favors a construction which will work equality of distribution among those standing in the same relation to the testator. *Roats's Estate*, supra.

The decree of distribution is affirmed at the costs of the fund.