Johnson *v.* Dunnings, Excr.

5-1230 301 S. W. 2d 457

Opinion delivered April 1, 1957.

[Rehearing denied May 20, 1957]

*Caesar C. Latimer,* Tulsa, Okla., and *Thad D. Williams,* for appellant.

*O. E. Westfall* and *Gaughan, McClellan & Laney,* for appellee.

Paul Ward, Associate Justice. This appeal has to do with the interpretation of a will. The pertinent facts involved are not in dispute.

E. W. Dunnings, who died on October 1, 1955, executed his last will and testament on March 25, 1955 which, in all essential parts, reads as follows:

"SECOND. I give, devise and bequeath to Gwendolyn Johnson, the daughter of my son, Odis M. Dunnings, the United States Bond which was made payable to E. W. Dunnings and Odis M. Dunnings."

"THIRD. I give, devise and bequeath to my granddaughter, Vera Richardson, a daughter of Mary Dunnings who married Charlie Richardson, the sum of Ten Dollars."

"FOURTH. I give, devise and bequeath all the rest and residue of my estate, whether real, personal or mixed property and wheresoever located, share and share alike, to my children and to the surviving heirs of deceased children. My said children now living being named as follows: Hattie D. Sanders, a daughter; Edward Lee Dunnings, a son; Eula D. Britton, a daughter; Robert M. Dunnings, a son; Myles G. Dunnings, a son; Derrick W. Dunnings, a son; Retha D. Beck, a daughter; It is my desire that the interest which would have gone to my son, Walter Dunnings, if living, should go to his daughter, Mildred Dunnings; The interest which would have gone to my daughter, Mary D. Richardson, is to be divided among three of her children, as follows: Thelma Carmier; Woodrow D. Richardson; Mary Bresker; the interest which I have given above in this will is the amount which I desire paid to Vera Richardson, a daughter of Mary D. Richardson."

Altogether testator had 10 children. At the time of his death 7 of these children were living, and their names are set out above in paragraph FOURTH of the will. Of the three children who were deceased at the time of the testator's death, 2 of them, Walter Dunnings and Mary D. Richardson, are also named in the same paragraph. The tenth child, Odis M. Dunnings, a son, died approximately four months before the testator executed his will. As stated in the SECOND paragraph of the will, Odis M. Dunnings was the father of appellant, Gwendolyn Johnson, and she was his only child.

It is noted here, for emphasis, that the testator's daughter, Mary D. Richardson, deceased, left surviving four children and that three of them took, under paragraph FOURTH, her entire share, and that the fourth child, Vera Richardson, received only $10 as is provided in paragraph THIRD.

Appellant, Gwendolyn D. Johnson, filed her petition in the Probate Court asking to have the last will and testament of the said E. W. Dunnings construed and interpreted, asking the court to declare that she was entitled to inherit a one-tenth interest in the estate

of E. W. Dunnings as particularly provided in the FOURTH Paragraph. The above petition was resisted by the executor and by all of the children and grandchildren of the testator [excepting appellant]. After the introduction of certain testimony, none of which is abstracted, the trial court held that the appellant, Gwendolyn Johnson, should not be entitled to any part of the estate of the testator, E. W. Dunnings, under the provisions of paragraph FOURTH of his will. From this ruling appellant has appealed.

In urging a reversal of the trial court's decree, appellant presents an array of arguments which indicate studious and energetic research. Much significance is attached to the first sentence in the FOURTH paragraph of the will. It is pointed out that this sentence alone contains testamentary words, and that it clearly includes appellant as being one of a designated class, that is, the heir of a deceased child. It is further argued, in this connection, that once appellant is designated as a beneficiary, it would take positive language to remove her from the class, and that there is no such language in the will. In other words, appellant says that if the testator had wanted her eliminated, he would have specifically said so as he did in the case of Vera Richardson.

The argument is also presented that the law favors a just and equitable distribution of estates, citing, *Yeates* v. *Yeates,* 179 Ark. 543, 16 S. W. 2d 996, 65 A. L. R. 466, and *Cross* v. *Manning,* 211 Ark. 803, 202 S. W. 2d 584. Also appellant contends that the intent of the testator must be gathered from the first sentence in paragraph FOURTH, and that the rest of the paragraph merely illustrates how the property is to be divided, viz; grandchildren are to receive only the share which would have gone to their parent if living.

We recognize the force of the arguments presented above, and we also recognize the rule relative to a devise to a class, but we do not think any of these are controlling in the case here under consideration. It is our conclusion that the chancellor must be affirmed in

this case under the well established rule, hereafter pointed out from our many decisions, that the intent of the testator must govern and that such intent (with a few exceptions not applicable here) must be derived from all the language in the will as opposed to isolated parts of the will. The courts generally recognize that rules of construction, as applied to wills, are merely aids to a determination of the testator's intent. As stated in *Park* v. *Holloman,* 210 Ark. 288, 195 S. W. 2d 546, the courts cannot make a will — they can only endeavor to determine the intent of the testator.

In interpreting wills the courts will look at the entire will. See *Campbell et al.* v. *Campbell, et al.,* 13 Ark. 513, and *Morris* v. *Lynn,* 201 Ark. 310, 144 S. W. 2d 472.

The rule that the intent of the testator governs in the construction of wills is so well established and has been so often repeated from the earliest cases down to the present, that only a few citations will suffice. In the *Campbell* case, *supra,* the rule was stated this way: "The leading rule in the construction of wills, is to give effect to what appears to be the intention of the testator, in view of all the provisions of the will; and if this intention can be ascertained, it should be carried out, unless contrary to law or against public policy." In the *Park* case, *supra,* this language was used: "The polestar of the court, in construing a will, should always be the intention of the testator; . . ." In *Jackson* v. *Robinson,* 195 Ark. 431, 112 S. W. 2d 417, this clear language was employed: "All of our cases are to the effect that the object in construing wills to ascertain the intention of the testator. This must be done from and language used as it appears from a consideration of the entire instrument, and when such intention is ascertained it must prevail, if not contrary to some rule of law, the court placing itself as near as may be in the position of the testator when making the will."

Where there is language in a will indicating a devise to a class and where the devisees are named individually, generally the latter will control. This was

specifically recognized in *Rand* v. *Thweatt, Administrator*, 222 Ark. 556, 261 S. W. 2d 778. There in reply to appellant's insistence on a devise to a class, the court said: "There is another settled general rule that is equally applicable to the case at bar, to the effect that where a bequest or devise is made to beneficiaries designated by name, they take as individuals rather than as a class, in the absence of a contrary intention appearing elsewhere from the will, or the surrounding circumstances." In line with the above we find in 57 Am. Jur. page 835, § 1263, Wills; "Where legatees are named as individuals and also described as a class, and there is nothing more to show the testator's intention, the construction usually is that the gift by name constitutes a gift to individuals, to which the class description is added by way of identification." And in 97 C. J. S., page 26, Wills: "Designation by name of the beneficiaries, and terms appropriate to describe groups or classes, not only may be used separately, but may be, and frequently are, employed together; when that is done, the designation by name being preceded or followed by words expressive of some common relation or status, and there is nothing to indicate an intention to the contrary, the gift ordinarily is to the individuals and not to a class, and the class description is merely added by way of, and serves the purpose of, identification of the individual beneficiaries, or of an indication of the reason for making the provision."

Construing the testator's will in this case by the rules above mentioned, we cannot say the chancellor erred in holding that appellant could not take under the FOURTH paragraph. With rare exceptions not applicable here, a testator can do as he pleases with his property, and the most effective way for a testator to cut a person off from his bounty is to omit that person's name from his will. Here the testator, in the FOURTH paragraph of his will mentioned all of his children and grandchildren except appellant. This could not possibly have been an oversight on the part of the testator because he mentioned appellant in the SECOND paragraph of his will. The only conclusion we are able

to reach is that the testator intended for appellant to take the bequest mentioned in the SECOND paragraph of his will and nothing more.

Affirmed.

Justices HOLT and ROBINSON dissent.

SAM ROBINSON, Associate Justice (dissenting). It is agreed that in construing a will the courts should seek to ascertain the intention of the testator as shown by the entire will. In my opinion, the will in the case at bar shows that it was the intention of the testator that Gwendolyn Johnson, his granddaughter, should receive that part of the estate which her father, Odis M. Dunnings, would have received had he been living. The will was executed about four months after the death of Odis M. Dunnings. The second paragraph of the will provides: "I give, devise and bequeath to Gwendolyn Johnson, the daughter of my son, Odis M. Dunnings, the United States Bond which was made payable to E. W. Dunnings and Odis M. Dunnings." Value of the bond mentioned was about $1,800. All of the surviving sons and daughters of the testator received like bonds by virtue of survivorship.

The value of the estate of E. W. Dunnings involved here is about $51,000. No evidence has been called to our attention which would indicate that the deceased would have any reason for treating his granddaughter, Gwendolyn Johnson, any different than his other children and grandchildren.

The third paragraph of the will is highly significant when read in connection with the fourth paragraph in determining the testator's intent. The third paragraph reads: "I give, devise and bequeath to my granddaughter, Vera Richardson, a daughter of Mary Dunnings who married Charlie Richardson, the sum of Ten Dollars." Vera Richardson is insane and confined in a mental institution.

We come now to the all-important fourth paragraph of the will, which provides: "I give, devise and be-

queath all the rest and residue of my estate, whether real, personal or mixed property and wheresoever located, share and share alike to my children and to the surviving heirs of deceased children." The foregoing quotation is the first sentence of the fourth paragraph. Certainly, down to this point, Gwendolyn Johnson would participate as a beneficiary in the residue of the estate. If she is to be denied a share of the residue, it must be found in the rest of paragraph four, which reads: "My said children now living being named as follows: Hattie D. Sanders, a daughter; Edward Lee Dunnings, a son; Eula D. Britton, a daughter; Robert M. Dunnings, a son; Myles G. Dunnings, a son; Derrick W. Dunnings, a son; Retha D. Beck, a daughter; It is my desire that the interest which would have gone to my son, Walter Dunnings, if living, should go to his daughter, Mildred Dunnings; The interest which would have gone to my daughter, Mary D. Richardson is to be divided among three of her children, as follows: Thelma Carmier; Woodrow D. Richardson; Mary Bresker; *the interest which I have given above in this will is the amount which I desire paid to Vera Richardson, a daughter of Mary D. Richardson."* (Emphasis supplied). It will be noticed that the fourth paragraph names the living children of the testator but does not state that all of the grandchildren are being named. The first sentence of the fourth paragraph specifically provides that the residue is to be divided share and share alike between the surviving children and the surviving heirs of deceased children. Gwendolyn Johnson is the surviving heir of a deceased child. Likewise, Vera Richardson is the surviving daughter of a deceased child. Vera is insane and the testator desired to leave her only the nominal sum of $10.00, as set out in Paragraph Three of the will; and to show that Vera was to be excluded from participating in the residue, Paragraph Four provides: "The interest which I have given above in this will is the amount which I desire paid to Vera Richardson, a daughter of Mary D. Richardson." It is clear to me that had the testator intended that Gwendolyn Johnson should take only the bond given to her

by the second paragraph of the will, and that she should not share in the residue of the estate, he would have specifically limited her part of the estate as he did in regard to Vera Richardson, another granddaughter.

On the other hand, it could be said that if the testator had intended that Gwendolyn should share in the residue he would have specifically named her as participating, as he did Mildred Dunnings, the daughter of Walter Dunnings, a deceased son.

The will is subject to the two constructions, as indicated. In a situation of this kind, the overwhelming weight of authority is to the effect that the will should be construed so as not to exclude the issue of a deceased child. In 95 *Corpus Juris Secundum* 846, it is said: "It will not be presumed that the testator intended to discriminate between the natural objects of his bounty. On the contrary, in the absence of any evidence of an intention to prefer some, the presumption is against such result, and in favor of equality as between beneficiaries of the same category or standing in the same relation to the testator, and a construction will be favored effecting equality between the natural objects of the testator's bounty, especially between those who are equally natural objects of the testator's bounty."

Law favors equality of benefits to descendants of testator's children. *In re Milhau's Estate,* 271 N. Y. S. 214.

A discrimination against descendants of one child in favor of other of testator's children should not be permitted unless testator's intention to do so is manifest. *In re Jerge's Will,* 40 N. Y. S. 2d 743.

Those who have equal claim in law, or in affection upon testator, should be placed in equal positions, where such can be done without doing violence to the written words of the will. *Curtis* v. *Safe Deposit & Trust Company of Baltimore,* 178 Md. 360, 13 A. 2d 546.

*In re Jerge's Will, supra,* the court quoted from *Soper* v. *Brown,* 136 N. Y. 244, 32 N. E. 768, as follows: "Even

if the construction given may be doubtful, it is a settled rule that, where a will, capable of two constructions, one of which would exclude the issue of a deceased child, and the other permit such issue to participate in a remainder . . . , the latter should be adopted.''

Of course, it is possible to construe the will as has been done by the majority, but the least that can be said is that the construction which should be given is doubtful, and, in these circumstances, the weight of authority is that the doubt should be resolved in favor of the issue of the deceased child. For the reason indicated, I respectfully dissent, and I am authorized to say that Mr. Justice HOLT joins in this dissent.