331 A.2d 408

**In re ESTATE of Ada M. CLARKE, Deceased.**
**Appeal of Richard Evan CLARKE and Margot Nease Clarke.**

Supreme Court of Pennsylvania.

Argued Oct. 4, 1974.

Decided Jan. 27, 1975.

42

David L. Gilmore, Washington, for appellant.

Ross Armbruster, Alton (pro hac vice), for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

On March 14, 1968, Ada M. Clarke executed a will. After small bequests to her children, she directed in paragraph Third that the rest of her estate be placed in trust

"for the following uses and purposes:

"The Trustee shall hold, manage, invest and reinvest said Trust Estate and shall distribute the net income . . . and principal from time to time as follows:

"(1) The principal shall be held in a single trust so long as any of my grandchildren, EVAN, MARGOT, CLAUDINE and JEAN, shall be under the age of twenty-five (25) years; and the Trustee shall use the income, together with so much of the principal as may in its opinion be advisable therefor, for the welfare, support and complete education of such of said grandchildren as shall need financial assistance, in the opinion of the Trustee. The trustee shall have complete discretion as to how much shall be used for each . . . .

"(2) As soon as none of said grandchildren is under the age of twenty-five (25) years, the principal and any accumulated income shall be divided into as many equal shares as there are of said grandchildren then living and said grandchildren then deceased with issue then living.

"(a) Any share so set apart for a deceased grandchild shall be transferred and delivered to such deceased grandchild's then living issue, per stirpes. . . .

"(b) Each share set apart for a living grandchild shall be transferred and delivered to him or her free of trust, and the trust shall terminate.

"(3) If no grandchild or issue of grandchild is living at the termination of the trust, then any remaining portion of the trust estate shall be transferred and delivered to those persons who would have been entitled thereto had I died at that time intestate."

At the time she executed her will, Mrs. Clarke had two sons, William and Richard. Richard had at that time

two children, Evan and Margot,[1] and William had two, Claudine and Jean.[2] Mrs. Clarke died on May 12, 1970. After her death, two more children were born to her son Richard, Richard II on June 23, 1970, and Robert on June 28, 1971.

After Mrs. Clarke's will was admitted to probate, claims were filed against the estate on behalf of Richard II and Robert, seeking a declaration of their right to participate in the residuary trust. In response, the trustee petitioned the orphans' court for the appointment of a guardian ad litem for Evan, Margot, Claudine, and Jean. A guardian was appointed and he petitioned the court to strike the claims of Richard II and Robert. The orphans' court sustained the claims, holding that paragraph Third created a class gift and that Richard II and Robert were members of the class. The guardian filed exceptions to the decree, which were overruled. Evan and Margot appeal to this Court.[3] We affirm.

■ A class gift is "a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, who are all to take in equal, or other definite proportions, the share of each being dependent for its amount upon the ultimate number . . ." *Billings's Estate* (No. 1), 268 Pa. 67, 70, 110 A. 767, 768 (1920). Appellees (claimants below) argue that the residuary bequest is a gift to a body of persons consisting of all Mrs. Clarke's grandchildren, uncertain in number at the time of the execution of her will and to be ascertained at a future time. Appellants con-

---

1. Evan and Margot are children of Richard by his first wife, Marguerite. On March 8, 1968, Richard married his second wife, Betty. The date and circumstances of the termination of Richard's marriage to Marguerite do not appear in the record.

2. The birthdates of Mrs. Clarke's descendants are as follows: William, August, 1917; Richard, June 3, 1923; Evan, October 3, 1950; Claudine and Jean (twins), May 7, 1951; Margot, July 4, 1954.

3. Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(3), 17 P.S. § 211.202(3) (Supp.1974).

tend that the bequest is an individual bequest to the four named grandchildren and, in the alternative, if it is a class gift, the four named grandchildren are the only members of the class.

It is axiomatic that the "[t]he question whether a gift is to a class or to the individuals constituting a class depends, of course, upon the intention of the testator . . .." *Billings's Estate, supra,* at 70, 110 A. at 768. However, testators rarely provide explicitly that their legatees or devisees are to be treated as a class.[4] The indicative intent is group-mindedness; "if the transferor intends to designate the transferees as a group or entity, rather than to designate as transferees the separate individuals who comprise the group or entity, then the gift is one to a class." 2 L. Simes & A. Smith, The Law of Future Interests § 612, at 47 (2d ed. 1956). Group-mindedness is, more specifically, an intention to benefit a group or entity regardless of which specific individuals comprise the group at the time the gift results in possession. This intention is manifested by the testator's allowance of the possibility of fluctuation in the number of ultimate recipients through births or deaths.

"A conveyance of property which designates the conveyees, or part of them, as 'children,' 'grandchildren,' 'brothers,' 'sisters,' 'nephews,' 'nieces,' 'cousins,' 'issue,' 'descendants' or 'family' limits a class gift if, but only if, it is found that the conveyor intended to designate as his conveyees a group capable of a future change in number, rather than specific individuals."

Restatement of Property § 279 (1940). See id., Comment a; Simes & Smith, supra § 612, at 47; 3 R. Powell, The Law of Real Property ¶ 352, at 92 (rev. ed. 1973); 5

4. See Cooley, What Constitutes a Gift to a Class, 49 Harv.L.Rev. 903, 912 (1936):

"The doctrine that the testator ever 'intends a class' when he does not say so in so many words is in any case a beneficent fiction. The vast majority of testators in all likelihood have never even heard of a class."

American Law of Property § 22.4 (A. J. Casner ed. 1952).

 In general, courts have held that the designation of beneficiaries by a class description only, such as "grandchildren," strongly reveals the testator's group-mindedness. On the other hand, designation by names alone indicates an intention to make a gift to individuals. Simes & Smith, supra § 612, at 47; see, e. g., *Bank of Delaware v. Estate of Kane*, 285 A.2d 440 (Del.Ch.1971) (class description only); *Estate of Lester*, 191 Kan. 83, 379 P.2d 275 (1963) (individual names only); see also Restatement of Property § 279, Comment a (1940); 4 W. Page, Law of Wills §§ 35.2, 35.4, at 491–92, 495–96 (W. Bowe & D. Parker rev. eds. 1961); American Law of Property, supra § 22.5, at 253. When both a class description and individual names appear, there is "evidence that the conveyor was simultaneously thinking of a group and of individuals. A constructional problem exists as to which of these conflicting thoughts shall be held to control." Powell, supra ¶ 353, at 97–98 (footnote omitted). Absent further evidence, the conflict is resolved in favor of a gift to individuals. *Cryder v. Garrison*, 387 Pa. 571, 576, 128 A.2d 761, 763 (1957); Restatement of Property § 280 (1940); Simes & Smith, supra § 612, at 48; Powell, supra ¶ 353, at 98; Page, supra § 35.4, at 496; American Law of Property, supra § 22.5, at 253. "Even though the beneficiaries are named, the gift may still be one to a class if it otherwise appears from the will that the testator so intended . . .." *Billings's Estate*, supra, at 70, 110 A. at 768; see *Cryder v. Garrison*, supra, at 577, 128 A.2d at 764; Restatement of Property § 280 (1940) ("unless a contrary intent of the conveyor is found from additional language or circumstances"); Simes & Smith, supra § 612, at 48; Powell, supra ¶ 353, at 98; Page, supra § 35.4, at 496–97; American Law of Property, supra § 22.5, at 254.

Appellants argue that, since Mrs. Clarke included the individual names of four grandchildren, the residuary bequest is a gift to the four named grandchildren.[5] However, we are convinced that the will evidences the testatrix's intention to make a class gift.

The core of group-mindedness is the intent on the part of the testator to benefit "a group capable of future change in number . . . ." Restatement of Property § 279 (1940). The indication of group-mindedness is sufficient if the group is capable of either future increase or decrease. Id., Comment e, at 1455. In her will, Mrs. Clarke clearly contemplated and provided for a future decrease in the number of takers. Distribution of principal was postponed until none of the named grandchildren was under the age of 25. At that time, "the principal and any accumulated income shall be divided into as many equal shares as there are of said grandchildren then living and said grandchildren then deceased with issue then living." Thus, any grandchild who was a potential member of the class at the execution of the will who failed to survive until the time for distribution and failed to leave issue who survived until the time for distribution would be removed from the group of takers; his expectant share would be divided among the grand-

5. We are not sure that testratrix's designation of legatees is subject to the general rule of construction favoring gifts to individuals. The clause containing the names of Evan, Margot, Claudine, and Jean serves merely to prescribe the duration of the trust. On its face, it seems that the draftsman probably used names to provide measuring lives for purposes of the rule against perpetuities. See Estates Act of 1947, Act of April 24, 1947, P.L. 100, § 4(b), 20 P.S. § 301.4(b) (1950) (repealed 1972); Probate, Estates and Fiduciaries Code, 20 Pa.C.S. § 6104(b) (Special Pamphlet, 1974). The direction for division of the principal uses only the general word of description: "said grandchildren then living and said grandchildren then deceased with issue then living." The sentence mandating distribution ("Each share set apart for a living grandchild shall be transferred and delivered to him or her free of trust . . . .") does not even use the word "said," which appellants contend acts to incorporate the names by reference.

children then living and then-living issue of deceased grandchildren. Thus, it is clear that testatrix intended to benefit a group capable of at least downward fluctuation. The requisite group-mindedness to indicate the intention to make a class gift is shown.

The conclusion we reach is supported by *Billings's Estate*, supra. There the testatrix

"gave all her residuary estate 'unto my nieces and nephews named, to wit [naming them], . . . share and share alike to be paid to them respectively' in the manner stated, with further provision, should any die before receiving his or her share, and without leaving children, the share of such deceased should become part of the residuary fund and go to the survivors. In a codicil testatrix revoked the residuary bequests made to a nephew and niece and directed the persons named should not share in the residuary estate . . .."

268 Pa. at 69, 110 A. at 767. It was contended that the revoked shares lapsed and passed to her intestate heirs. This Court held that the bequest was a class gift and that the revoked shares passed to the remaining members of the class. We stated:

"[W]hile the beneficiaries are specifically named, there is a survivorship created in the event of the death of any one of them without children, and the plan of equal division of the residue among the beneficiaries is carried out. [citation omitted]. When testatrix executed the codicil she made no attempt to change the provisions of her will except to the extent specifically stated, which directed that a nephew and a niece should not share in the estate. Testatrix in so doing clearly indicated an intention to divide the residue among the remaining eight nephews and nieces and the survivor or survivors of them, if any died without issue. In our opinion these provisions are sufficient to overcome the effect of designating the bene-

ficiaries by name and that testatrix intended them to take as a class."

268 Pa. at 71, 110 A. at 768.[6]

We conclude that Mrs. Clarke's residuary bequest evidences sufficient group-mindedness to indicate an intention to make a class gift. This conclusion, however, is not sufficient to entitle Richard II and Robert to share in the bequest, for the further question remains, what group did she have in mind? Appellants argue that, assuming the bequest is a class gift, the group of named grandchildren is the exclusive membership of the class. They point to language in *Billings's Estate* suggesting that the naming of beneficiaries in a class gift may be "for the purpose of fixing with certainty the members of the class . . . ." 268 Pa. at 71, 110 A. at 768.[7] It is of course true that a testator may specify the entire membership of the benefited class. If Mrs. Clarke intended by the enumeration of "Evan, Margot, Claudine and Jean" to specify an exclusive membership, Richard

6. Accord: *Walker v. First Trust & Sav. Bank,* 12 F.2d 896, 899–903 (8th Cir. 1926); *Cain v. Dunn,* 241 So.2d 650, 653 (Miss.1970); *Shannon v. Riley,* 153 Miss. 815, 121 So. 808 (1929); *United States Trust Co. v. Jamison,* 105 N.J.Eq. 418, 148 A. 398 (1929); *Estate of Boardman,* 126 Vt. 77, 80, 223 A.2d 460, 462 (1966). See especially 5 American Law of Property § 22.8, at 264 (A. J. Casner ed. 1952); see also 4 W. Page, Law of Wills § 35.4, at 498–99 (W. Bowe & D. Parker rev. eds. 1961).

7. See American Law of Property, supra note 6, § 22.8, at 265 (footnote omitted):

 "When all the beneficiaries of a disposition are named, no problem of increase in the beneficiaries by the birth of individuals who fit into the group made by the named persons is possible."

See also id. § 22.6, at 256–57 (footnote omitted):
"Even if the decision is that the members of the group who are not named cannot share in the gift, that does not mean that those named cannot possibly take as an entity. In other words, additional evidence may justify the conclusion that those named take as a class for the purpose of settling the issue of the effect of a failure of one to survive the date the will takes effect even though the class is held not to include the children who are not specifically named."

II and Robert would not be entitled to share in the bequest.

In our opinion, Mrs. Clarke did not so intend. We conclude that she intended to benefit the class consisting of all her grandchildren.

██ Our starting point is the rule of construction that when the language of a will is amenable to more than one interpretation, "the law favors a construction which will work equality of distribution among these standing in the same relation to the testator." *Jones Estate,* 151 Pa.Super. 396, 400, 30 A.2d 241, 243 (1943); see *Schappell Estate,* 424 Pa. 390, 393, 227 A.2d 651, 653 (1967); *Zeigler Estate,* 356 Pa. 93, 95, 51 A.2d 608, 609 (1947); *Hirsh's Trust Estate,* 334 Pa. 172, 179, 5 A.2d 160, 163 (1939); *Edelman's Estate,* 276 Pa. 503, 508, 120 A. 457, 458 (1923); *Schick Estate,* 169 Pa.Super. 226, 232, 82 A.2d 262, 265 (1951); *Ayres Estate,* 35 D. & C. 2d 506, 513 (O.C.Philadelphia, 1965). A testator is of course free to confer his bounty unequally or discriminatorily, but inequality or discrimination will not be presumed unless the intention to do so is manifest. See *Tafel Estate,* 449 Pa. 442, 296 A.2d 797 (1972).

In this case, discriminatory intent is not manifest. From a reading of the whole will and a consideration of the surrounding circumstances, see *Lilley Estate,* 443 Pa. 1, 4, 275 A.2d 37, 38 (1971), we conclude that Mrs. Clarke intended to benefit all her grandchildren and probably believed that she was doing so. She named every grandchild who was alive when she executed the will.[8] The circumstances suggest that she probably be-

8. See *Cain v. Dunn,* supra note 6; *In re Will of Hennes,* 240 So. 2d 859 (Fla.Ct.App.1970); cf. *In re Murphy's Estate,* 99 Mont. 114, 43 P.2d 233 (1935). Compare the cases in which the testator or donor omitted from a specification of names the name of one who was alive and known to the testator or donor: *Strauss v. Strauss,* 363 Ill. 442, 2 N.E.2d 699 (1936); *Rhode Island Hospital Trust Co. v. Calef,* 43 R.I. 518, 520, 112 A. 787, 789 (1921) (dictum); *Wildeberger v. Cheek's Ex'rs,* 94 Va. 517, 27 S.E. 441 (1897); *In re Jackson,* 25 Ch.Div. 162, 167 (1883); cf. *Johnson v.*

lieved that no further grandchildren would be born. At the writing of the will, her sons were age 50 and 44, and her youngest grandchild was age 13. It is very likely that she assumed that her sons would have no further children.

Furthermore, there is nothing in the will or the surrounding circumstances suggesting that Mrs. Clarke would discriminate against after-born grandchildren. Cf. *Earle Estate*, 369 Pa. 52, 57, 85 A.2d 90, 93 (1951); compare *Spencer v. Priestly*, 105 R.I. 388, 252 A.2d 182 (1969) (will provided "Under no circumstances shall any unborn grandchildren, as of this date, or other than the above named five grandchildren receive any sum or be included in this mentioned trust."). We find great similarity between the facts of this case and *In re Will of Hennes*, 240 So.2d 859 (Fla.Ct.App.1970). There the testator established a testamentary trust

"for the benefit, care, comfort, maintenance and education of the heirs of the body of my said nephew, Miles Lloyd Minor, who are:

1. Patricia Minor
2. Beverly Minor
3. Danny Minor
4. Heidy Minor."

Another child was born to Miles Minor a year after the execution of the will. The court held that the after-born child was entitled to share equally in the bequest, stating:

"In the absence of any reason of record to exclude any unborn child and thereby benefit only a portion of the nephew's heirs, we feel it is more likely that the testator had in mind to . . . [benefit] *all* of the heirs

*Dunning*, 227 Ark. 640, 301 S.W.2d 457 (1957); *Young v. Whisler*, 19 Ill.2d 501, 167 N.E.2d 191 (1960); *Westerfelt v. Smith*, 202 Iowa 966, 211 N.W. 380 (1926); *Wall v. Wall*, 157 Neb. 360, 59 N.W.2d 398 (1953); *Moore v. Baumann*, 311 S.W.2d 272 (Tex.Civ. App.1958).

of the body of the nephew as a class and thus to include unborn children. In other words, there is no criteria [sic] or basis for believing that the testator intended to discriminate against the after born child." 240 So.2d at 860. See also *Cain v. Dunn*, 241 So.2d 650 (Miss.1970).

We see no basis for believing that the testatrix intended to discriminate against after-born grandchildren. We therefore conclude that the residuary clause of the will created a class gift intended to benefit all her grandchildren. Accordingly, the decree of the orphans' court must be affirmed.

Decree affirmed. Each party pay own costs.

JONES, C. J., did not participate in the consideration or decision of this case.

POMEROY, J., concurs in the result.